Chief Justice Robertson
delivered the Opinion of the Court.
M. Crawford, a retail merchant in Mount Vernon in this State, sold his stock of goods to T. J. & J. M. Smith, for cost, carriage and seven and a half per cer >. advance thereon, to be secured by their promissoy notes at sis, twelve, and eighteen months credit. Vho day after the sale, the parties commenced invoici:".- lb«3 goods, a few articles of which, when invoiced], •«fore sold, during the same day, as the goods of T. J. Ik .1. M. Smith, Crawford not objecting, and moreover remarking, to the persons who applied to buy them, ;?»d , he had no longer any right to sell then , Put tlnl im. vendees might sell them if they choro to do so.
During the night of that day, after a considerable portion of the goo-is nad been invoiced and separated from the residue *.,iX*. uninvoiced, a thief broke into the store house, and Mole sundry articles, of the aggregate *60 value of about three hundred dollars. Some of 'which, of the value of about forty dollars, had been invoiced and deposited on or under the counter of the store room. Afterwards, the parties, having agreed concerning the carriage without actually weighing the goods, disagreed as to which of them should lose the value of the stolen goods; and, leaving that matter for future adjustment, the contract was duly carried into effect by the execution and acceptance of promissory notes for the ascertained contract price of the remaining goods.
remains to be ei^to'Vseertain the quantity, or no’ stipulation fo# passing the ti-done^the^titie will not have pas serVthe ^rigtrtof property, as well as of possession, will remain with the loss^wiinie his if the proper-the ownership'is in that condition, the* quantity^nd price are ascer-«oods’mTready for delivery upon the terms of salo being complied with, the title chaser, and they And^ho^thesaíe may comprise di vers articles, the quantity & prices of which are to be ascertained progressively, the title to each distinct parcel, lot or piece,it seems, vests in the purchaser, as soon as the quantity and value of that particular parcel, lot or piece, is ascertained. So-
*60 Crawford afterwards brought an action of assumpsit for the price of the stolen goods; and, on the trial of the case, after the foregoing facts had been proved, the Circuit Judge instructed the jury that he had no right to recover.
The declaration being substantially good, and the evidence, if it show any cause of action whatever, corresponding sufficiently with some of the several counts— the only question we shall consider, is that presented by ^le mstruction given to the jury; and that question depends altogether on another, and that is — who was owner °f the goods when they were stolen ?
"To ascertain satisfactorily when a contract for the sale personal property passes the title to the vendee, js sometimes far from being an easy task. A legal title may pass by the terms or the legal effect of the contract, and nevertheless, in judgment of law, the vendól- . . . . . . .. ° . . may have a right to retain the possession until the ven-^ee kave Performe<i some act, which, by express stipulation, or legal intendment, must be done before he cau have a r*ght the possession of that to which he had acquired a legal title. Thus a simple sale of a horse f°r a stipulated price to be paid on delivery, or without any agreement as to the time of payment or delivery, or uPon an agreement to execute a promissory note for the price simultaneously with the delivery, would, perse, A , ...7 , , . , J , , , , vest the title to the horse in the purchaser; but as (noth-jng appearing tb" the contrary) the law, in every such case, would imply a lien by the vendor, for securing Perf°rmance of the vendee’s undertaking, the latter could not maintain an action of detinue against the *61 former, for the horse, without first performing or offering to perform whatever he had promised to do concurrently with the delivery of the possession, or previously thereto; and still, if the horse shall, in the mean time, have died or been stolen, the loss will, of course, be that of the owner — that is, the purchaser.
In this case— where a country merchant sold his entire stock at cost and carriage and 71 per cent, advance, and/he and the purchaser commence^ mea suring and invoic ing the goods , laying them by as they progressed , but, before they got thro’, a thief broke into the store in the night, and stole some that were invoiced and laid by,and some that were not — it is held, that such of the stolen goods as were not mea sured and invoiced, remained the property of the seller, who cannot recover the value from the purchaser ; but those that were measured, invoic ed and laid aside, had become the property of the purchaser— who must bear the loss and is liable, in assumpsit, to the seller, for the val ue — unless it was the intention of the parties that the goods should he weighed, to ascertain the car riage.
*61 But if, by the contract of sale, any thing is to be done by the vendor, for ascertaining the weight, or extent, or price, of property sold by him, and there be no stipulation for passing the title before such thing shall have been done, then the law adjudges the right of property, as well as that of possession, to be in the vendor until after he shall have ascertained the weight, extent or price of the property contracted to be sold. Thus a sale of tobacco, at a fixed price per hundred weight, to be ascertained by weighing, will not constructively vest the right of property in the vendee, until after the tobacco shall have been weighed, and the entire quantity and price of it thus rendered certain, according to the intention of the parties. But, as soon as the weight of the tobacco shall have been properly ascertained, the property will, eo inslanti, vest in the purchaser even though he may not yet be entitled to the possession of it, without paying the price, or assuring the payment of it according to the terms of the sale. Touchstone, 225; Dyer, 30, a; Feise vs. Wray, 3 East, 102; Hanson vs. Meyer, 6 lb. 614; Rugg vs. Minot, 11 lb. 210; Withers vs. Liss, 4 Camp. 237.
In Hanson vs. Meyer (supra) one party having sold to the other all his starch then in a ware house, at a stipulated price per hundred weight to be paid by a two months’ bill, and the weight to be ascertained by the warehouse man, it was decided that the right of property did not pass to the vendee until the starch had been weighed, but did pass to him, without delivery, as soon as the weight had been ascertained.
In Withers vs. Liss (supra,) a parcel of goods having been sold while in the custody of a ware' house man, to be paid for by a bill of exchange, for a certain price per hundred weight, to be ascertained by weighing the goods, Lord Chief Justice Gibbs decided, at Mid Prius, that, until *62 the goods had been weighed, no title to them had passed to the vendee; because something remained to be done to ascertain the price, and, until the price had been thus ascertained, the bill of exchange to be given for it could not be drawn.
If there is any custom of merchants in such cases, it may be presumed (nothing appearing to the contrary) that the parties inten- , ded to conform to it; and the cus tom may be proved as evidence of the intention, and will determine the right of property in the invoiced goods. But in the absence of proof of a custom,the pre sumption, arising from the obvious convenience of the parties and the natural fitness of things, is, that the amount of. carriage was to be ascertained by a general estimate, and not by weigh ing every article separately: conse quently, that the title of each piece or parcel passed without its being weighed for that purpose.
And, in Rugg vs. Minot (ubi supra,) a lot of unweighed casks of turpentine having been sold at auction at a. certain price per hundred weight, and the whole having afterwards been consumed by fire, after the weight of some only of the casks had been ascertained, Lord El-lenborough decided, that the right of property in the ■ casks the weight of which had been ascertained, was in the buyer, but that the title to the other casks remained still in the seller, when they were all consumed; and that, consequently, the vendor lost the value of the latter, and the vendee that of the former casks.
So far as the uninvoiced goods may be concerned, there seems to have been nothing in the contract of sale, or in the subsequent facts, as proved on the trial, which could entitle this case to be excepted from the application of the general principle recognized and applied in the adjudged cases to which we have just referred, not as authorities, but as persuasive evidences of the law of such cases.
The disavowal by Crawford of any right to vend the goods by retail, as his own, after he had made the contract with the Smiths, was perfectly consistent with reason and the obligations of his agreement with them, and was not,, in any degree, inconsistent with the fact that the title to the goods still remained in him. Nor does the fact that they sold some of the invoiced articles in the presence and with the consent of Crawford, tend to prove that the right of property had passed to the Smiths, in all the goods, whether invoiced or not, even though it might perhaps imply the mutual understanding of the parties that, as soon as an article had been invoiced, the title to it was vested in the vendees.
As, then, the amount of the price to be given for the store, could not be known, nor the notes executed therefor, until after the taking of an invoice, such of the stolen goods as had not been invoiced were, in judg *63 ment of law, the property of Crawford; and, as to them, therefore, the loss must, in our opinion, be his alone.
But we are inclined to a different conclusion respecting such of the stolen goods as had been invoiced and specially deposited. The right of property in them should be deemed to have become vested in the ven-dees, unless we should presume that the actual weighing of them was still intended by the parties, and was, therefore, necessary for completely transferring the right of property in them. If there be any custom among merchants, as to the usual mode of ascertaining the cost of the carriage of an invoiced lot of dry goods, that custom should determine the question as to the right of property in that portion of the stolen goods which we are now considering. But no custom having been proved, we are left to consider the question upon intrinsic considerations of fitness and reason; and these incline us to the conclusion, that the parties did not contemplate the weighing of each separate article of the store of goods, but intended, when the prime cost of the entire stock had been ascertained, to add a gross sum for carriage, to be estimated by the character and value of the goods. Such a' course might sufficiently approximate certainty, and would save much time, and the very vexatious and long protracted care and unnecessary labor of weighing every separate article of the store. And the fact that the parties did not weigh any of the goods, but seem to have understood that, when an article had been invoiced, the vendees might re-sell it, and to have added to the cost of the goods, an estimated and gross sum for carriage, fortifies the deduction, otherwise reasonable, that, when they made the contract, they intended only to invoice the goods; and, if this were admitted, or certainly known, the law would, in our opinion, decide that when an article or piece of goods had been invoiced and packed away (the data for ascertaining the carriage being thus fixed) the right of property in it thereby passed from the vendor to the vendees. But the facts upon which the lar? would establish this deduction,' being somewhat indeterminate, the Circuit Judge could not, as we think, *64 decide, as a mafter of law, who owned such of the stolen goods as had been invoiced. The intention of the parties as to the weighing of them or not, was a matter fact’t0 inferred by the jury alone, from the nature of the case, and all the accompanying circumstances.
And therefore it seems to us, that the Circuit Judge erred in instructing the jury peremptorily, as he did, to find a verdict for the defendants in the action.
Wherefore, it is considered that the judgment in bar of the entire action be reversed, and the cause remanded for a new trial.