DELAWARE GENERAL TERM, July, 1850. *H. Gray, Shankland, Mason, and Monson,* Justices.

## BREWER *vs.* SALISBURY and others.

On the 8th of December, 1848, the plaintiff bargained with W., a tanner, for the purchase of fifteen sides of harness leather, which were then in W.'s shop, in an unfinished state, at a certain price per pound when finished. The plaintiff paid W. $30, as the probable value of the leather; and if it should exceed that amount, the plaintiff was to pay the excess. On the 18th of December, W. notified the plaintiff that the leather was finished, and desired him to call and select the sides he had purchased. The next day the plaintiff went to W.'s shop and took away five sides. The plaintiff and W.'s servant, by W.'s direction, selected nine sides and put them by themselves, in the middle of the shop, and some others which were hung

up. The sides remained to be cleaned, &c. which was about three hours' work, and then W.'s servant was to send them to the plaintiff. After this, and during the same day, W. sold all his property to the defendants, who took possession of the shop, and the leather. in question; *Held*, that the delivery of the leather to the plaintiff was complete, and transferred the title to him; and that he could recover the value from the defendants. MASON, J. dissented.

BREWER sued Salisbury and others in a justice's court, to recover the value of ten sides of leather. The jury gave a verdict for the plaintiff for $18,12 damages, on which the justice rendered judgment, with costs. The county court of Cortland county reversed the judgment, on the ground that the property did not pass to the plaintiff—that there was no delivery—and that the contract between the plaintiff and Webster was executory only. The plaintiff appealed.

The facts to be gathered from the pleadings and proofs were substantially these. On the 8th of December, 1848, the plaintiff bargained with one Mansel Webster, a tanner, for the purchase of fifteen sides of harness leather, which were then in Webster's shop, in an unfinished state, at the price of eighteen cents per pound when finished. The plaintiff paid Webster thirty dollars, as the probable value of the leather, and if it should exceed that amount, the plaintiff was to pay the balance or excess. On the 18th of December, Webster sent word to the plaintiff that the leather was finished, and desired him to call next morning and select the sides he had purchased. On the 19th of December, the plaintiff went to Webster's shop and took five sides, weighing sixty-six pounds. The plaintiff and Webster's hired man, Thomas Bolan, by Webster's direction, selected nine sides, and put them by themselves in the middle of the shop, and also two russet sides, which last were hung up. The grain was to be cleaned off the nine sides, and the stuffing was to be struck off the russets, which was about three hours' work, and then Bolan was to send them to Brewer. After this, and during the same day, in the afternoon, Webster sold his property to the defendants, who immediately took possession of the shop and all the leather. The next evening two of the defendants were ad-

Brewer *v.* Salisbury.

vised of the plaintiff's claim; and in a few days thereafter the plaintiff informed the defendants that he had bought the ten sides, and that his purchase was prior to the one under which the defendants claimed, and requested that they would go and see Mansel Webster. Thompson said he did not doubt the plaintiff's word, and that he had talked with Webster, and his story did not differ materially from the plaintiff's. The plaintiff demanded the ten sides of the defendants, and said, "you may weigh them and what they overrun in weight I will pay you in specie," and he took the specie out of his pocket. The defendants refused to give up the leather.

*Stephens & Duell,* for the plaintiff.

*G. A. White,* for the defendants.

MONSON, J. We are referred by the counsel for the defendants to the case, among others, of *Downer* v. *Thompson,* (2 *Hill,* 137,) where an order by the defendant, who resided at Westchester, addressed to the plaintiff at Chitteningo, for 250 barrels of cement, was held by the court not to be complied with by sending 260 barrels. This case went to the court of errors, and all the members, except two, voted for reversal. (*See* 6 *Hill,* 211.) Senator Hopkins observed, "that the excess would hardly seem to be so large as to preclude a jury from inferring that it was only added to make sure of having delivered enough, the article being liable to some loss by leakage, and the excess being of no very great value as compared with the anticipated profit upon the whole. If the rule is to be a rigid one, that no more shall be delivered than is contracted for, then the least overplus must vitiate the delivery. But if some latitude is to be allowed for the sake of abundant caution, as I think there should be, it is a question proper for the jury to decide, how much excess there may be without vitiating the delivery." In 14 *Wend.* 31, the plaintiff sold some carpeting to one Simmons, for cash, who took a roll home, to cut off what he wanted. About three weeks after, the remnant was returned to the plaintiff, who presented his bill for payment, but in the meantime Sim-

Brewer *v.* Salisbury.

mons had sold all his furniture, including the carpet, to the defendant, an auctioneer, and obtained an advance on it of $350, giving him possession, and absconded. The court said there was no delivery by which the plaintiff's title to the carpet was divested. And they also said, if there was a delivery, obtained by false pretenses, which was clearly proved, then by the revised statutes the property was feloniously obtained, and the owner was entitled to recover it from a bona fide purchaser. In *Ward* v. *Shaw,* (7 *Wend.* 404,) the plaintiff sued the defendant for two fat cattle, taken by him as sheriff, out of the possession of Crawbuck, who was a butcher, and had agreed to purchase them of the plaintiff at $7,50 per 100 lbs. which the quarters would weigh when slaughtered. C. was to prepare the cattle for slaughtering, to slaughter them, take the quarters to market, weigh them, and pay the amount they would come to, which was to be received by the plaintiff in full of the oxen. It was held that the title did not pass to Crawbuck. Here the sale was for cash, payment was not waived, and no part of it was made, and could not be according to the terms of the contract, until the price was ascertained by weight. This, with the foregoing cases, is distinguishable from the case at bar. It is true, as a general proposition, that if any thing remains to be done, as between the seller and the buyer, before the goods are to be delivered, a present right of property does not attach in the buyer. (2 *Kent's Com.* 496.) The goods sold must be ascertained, designated, and separated from the stock or quantity with which they are mixed, before the property can pass. If the goods be sold in bulk, and for a single price, the sale is perfect and the risk with the buyer; but if they be sold by number, weight, or measure, the sale is incomplete and the risk continues with the seller, *until the specific property be separated,* &c. In *Crofoot* v. *Bennett,* decided by the court of appeals in May, 1849, (2 *Comst.* 258,) the owner of a brick yard sold to the defendant 43,000 bricks, to be taken out of an unfinished kiln containing a larger quantity. He also delivered to the defendant possession of the yard, and agreed with him to burn the kiln, which he did, and the owner then executed to the plaintiff a bill of sale of all the

Brewer v. Salisbury.

bricks in the kiln; held that the delivery was not simply of the specific brick eventually taken by the plaintiff, but of the whole, with the privilege of selecting the 43,000. Strong, justice, in delivering the opinion of the court, among other things, says: "If the goods sold are clearly identified, then although it may be necessary to number, weigh, or measure them in order to ascertain what would be the price of the whole, at a rate agreed upon between the parties, the title will pass; but if a given number out of the whole are sold, no title is acquired by the purchaser until they are separated, and their identity thus ascertained. The distinction in these cases does not depend so much upon what is to be done, as upon the object which is to be effected by it. If that is specification, the property is not changed; if it is merely to ascertain the total value at designated rates, the change of title is effected." And again, "If one sells an article and delivers it, the delivery would be none the less effectual, because the vendor happened to be employed to perform some additional work upon it, even at his own expense."

In the case before us thirty dollars were paid as the probable value of the hides; the vendor said they were finished, and seemed to suppose that nothing further was to be done. He said the plaintiff could have the leather; and left his man, Bolan, with the plaintiff to select the sides, which were put in a pile by themselves. A part, viz. five sides, were taken away by the plaintiff; and the rest, which the plaintiff supposed needed some cleaning, were left with Bolan for that purpose; and the trifling difference between the estimated and ascertained value of the leather, should there be any for the plaintiff to pay, did not seem to be considered by the parties as rendering the delivery less complete; or if there was any question as to what they intended, the case was fairly left to the jury, whose verdict I think was right; consequently the judgment of the county court ought to be reversed, and that of the justice affirmed.

H. GRAY, J. and SHANKLAND, J. concurred.

MASON, J. dissented.

Judgment of county court reversed.