CASE 14—PETITION EQUITY—SEPTEMBEE 22.

## Duncan vs. Lewis.

APPEAL FROM GREEN CIRCUIT COURT.

1du183
102  110

1du  183
121   231

1. The sale of a lot of mules at a fixed price, on a stipulated credit—the seller to
keep them for a few weeks and then deliver them to the purchaser on his giving notes
for the price, with good security—vests the legal title to the mules in the purchaser;
though the seller would have a lien on them for securing the purchaser's performance
of his undertaking. (7 *Dana*, 61.)

2. Where, after the purchase, but before the delivery, the purchaser and another
formed a partnership, whereby it was agreed that the mules should be put into the
joint stock, and sold on joint account, and they were so sold, the surety of the pur-
chaser in the notes given for the price, who was compelled to pay the notes, cannot
hold the partner liable as a joint *purchaser*.

SIMPSON & SCOTT for appellant.

J. R. UNDERWOOD, for appellee, cited *Story on Part.*, ch. 7,
sec. 103 ; *Ibid, ch.* 8, secs. 138, 139.

T. T. ALEXANDER, on same side, cited 4 *Met.*, 246 ; 16 *B. M.*,
264.

JUDGE ROBERTSON DELIVERED THE OPINION OF THE COURT:

John W. Wright bought from H. C. Chalmes a lot of mules
at a fixed price, on a stipulated credit. Chalmes was to keep
the mules for a few weeks, and then deliver them to Wright,

on the execution of his notes, with good security, for the conventional price. On the 18th of July, 1860, the mules were delivered to Wright, and he delivered to Chalmes two negotiable notes, signed by himself as principal and William Lewis as his surety. In the meantime, after the purchase of the mules, and before their delivery and the execution of the notes, Wright and the appellant, Duncan, entered into a qualified partnership, whereby it was agreed that Wright should contribute to the joint stock the mules he had bought from Chalmes, and others he had bought from Headly, and Duncan should put into the stock mules he had bought from Smith and others he had himself fed; all of which mules, as thus contributed by each party, were to be sold on their joint account and for their joint profit; and were afterwards so sold as partnership property.

Lewis, having been compelled to pay a large sum as surety in the notes signed by himself and Wright, brought this suit against Duncan for restitution, on the ground, as alleged in the petition, that Duncan was a dormant partner in the purchase of the mules for which the notes were given. This allegation being denied by Duncan's answer, a verdict and judgment were rendered against him for the sum paid by Lewis. This appeal seeks a reversal of that judgment.

According to the legal effect of the only proof of the character and terms of the contract of purchase, the title to the mules was vested in Wright on the day of the contract, and they were held at his risk by Chalmes, either for the vendee's benefit in feeding or for the security of the vendor for the execution of the notes with good security. Had the mules died in the possession of Chalmes, and without his fault, the loss would have been Wright's, and he would have still been liable to Chalmes for the price. This doctrine, as often recognized by this court, is conclusively settled by British and American authorities uniform and well understood. The following quotation from this court's opinion in *Crawford vs. Smith* (7 *Dana*, 61), may be taken as an apposite illustration of it: " A legal title may pass by the terms or the legal effect of the contract, and nevertheless, in judgment of law, the vendor may have a

Duncan vs. Lewis.

right to retain the possession until the vendee shall have performed some act which, by express stipulation, or legal intendment, must be done before he can have a right to the possession of that to which he had acquired a *legal title*. Thus a simple sale of a horse for a stipulated price, to be paid on delivery, or without any agreement as to the time of payment or delivery, or upon an agreement to execute a promissory note for the price simultaneously with the delivery, would, *per se*, vest the title to the horse in the purchaser; but as—nothing appearing to the contrary—the law, in every such case, would apply a lien by the vendor for securing performance of the vendee's undertaking, the latter could not maintain an action of detinue against the former for the horse without first performing, or offering to perform, whatever he had promised to do, concurrently with the delivery of the possession or previously thereto; and still, if the horse shall, in the meantime, have died or been stolen, the loss will, of course, be that of the owner; that is, the purchaser."

According to the testimony, without discrepancy or doubt, such was the contract and its legal effect in this case; and the circuit judge ought so to have instructed the jury. But, instead of doing this, he instructed the jury, vaguely and ambiguously, that, if they believed that Wright and Duncan were partners in the mules at the time they were *purchased*, they should find for Lewis; thus bewildering the jury with the question when the purchase was complete so as to vest title in the mules; and also instructed them misleadingly, that "if Wright agreed with Chalmes that he would *take* the mules at a future day at a certain price, and then execute his note, the purchase was not complete until the note was executed."

There is no pretense of testimony that Duncan ever agreed or intended to be responsible for the price of those mules which Wright put in as his own, already bought on his own credit, and to be paid for by himself alone. Extracts from Duncan's letters to Wright concerning their debts and payments of them, in which he spoke of them without discrimination as "our debts," and said they were all paid "except Headly's, Redman's, Smith's, and Chalmes's," cannot be so perverted as to imply

that he was personally bound, as partner or otherwise, for the Chalmes debt, or that Wright was bound for the Smith debt. These debts must have all been paid before there could be an adjustment of profits; and "our debts" does not mean our joint partnership debts only, but, when the facts indisputably proved are considered, the separate debts of each were "our debts;" even though, as proved, one is yours and another mine. But however the jury may have construed those extracts, they certainly do not tend to prove that Duncan and Wright were partners when Wright bought the mules from Chalmes, or that Duncan ever agreed to be liable for the price of them.

From this, the only judicial view of this case, it is evident that the jury were misinstructed, or not properly instructed, and that neither the law nor the facts authorized the verdict.

Judgment reversed, and cause remanded for a new trial according to the foregoing opinion.