Barbour, J.
(dissenting.) This action was brought to recover the price of 1227 bales of hay, alleged in the complaint to have been sold and delivered by the plaintiffs to the defendants. The answer admitted the sale and delivery of 122 bales, and •contained an offer to pay therefor, with interest and costs to that time, but denied as to the remainder.
Upon the trial, the testimony showed that the plaintiffs had a cargo of hay, consisting, in fact, of 1227 bales, in the barge Norfolk, lying off the' Charles street pier, a portion of which was piled upon deck, and the remainder, some 500 bales, was in the barge’s hold, the hold being full, and each bale being marked, upon one of the slats, with its weight; and that a bargain was then made between the plaintiffs and the defendants for the sale and delivery of the hay to the latter.
The case shows that the witnesses differed somewhat, in regard to the terms of that bargain. All agree, however, in stating that the price fixed was $1.30 per hundred pounds for good shipping hay, and one dollar a hundred for the clover ; *29 the weight to be ascertained by deducting five pounds from the weight marked upon each bale.
■ One of the plaintiff's, of record, being the one who made the bargain on their behalf, testified that, after the price had been agreed upon, he asked the negotiating defendant “ where he would have the hay ?” and that he replied, pointing to" a schooner, “ put your hay alongside that schooner, and we will take care of it,” or, “ I will take care of it,” or, “ I will send a man around to take care of it.” The witness subsequently stated, “ I am certain he said he” (the defendant) “ would send a man around ;” and he was further examined and testified as follows :
Ques. “ Who was to take the barge to the schooner ?”
Ans. “ We were to do that.”
Ques. “ That was in the contract ?”
Ans. “Tes, sir; he told us to take the barge to the schooner, and we did so.”
Ques. “ Who was to take the hay off your barge and put it on the schooner ?” .
Ans. “ The men that worked for us on the barge.”
Ques. “ I understand that the men in your employ were to put it on board the schooner, and they did so, all that was put on board ?”
Ans. “ Tes, sir; I think they did so ; they did.”
The other plaintiff, substantially, corroborated the evidence of his partner in regard to the terms of the bargain, and also testified with the aid of his own memorandum, that he tallied the hay when put on board the barge at Albany, from the marks upon the' bales, and proved the quantity of each kind, as stated in the complaint.
Hone of those facts were controverted by any other witness, except that the defendant who made the bargain, on behalf of his firm, with another witness, testified that the sale of the clover hay was not absolute, but that the plaintiffs reserved to themselves the right to retail the same or any part of it, at a price exceeding a dollar per hundred, and that it was agreed *30 that the defendants should take .what should remain unsold by the plaintiffs.
■ It was also proved, without contradiction, that, immediately upon the closing of the bargain, the defendants directed a man, (Mr. Rixford,) in the presence and hearing of the plaintiffs, to go" and “ inspect the hay,” or, “ to attend to it,” that Mr. Rixford, accordingly, went on board, and “tallied” the hay by taking the weights marked upon the bales as they were rolled from the barge to the deck of the schooner; that, after 122 bales of shipping hay had thus been transferred to the schooner, a fire, breaking out in the vicinity, swept over both vessels, and entirely consumed them, with their contents.
That evidence, thus uncontradicted, established the fact, I think, beyond controversy, that it was understood and agreed by the parties to the bargain, and as a part thereof, first, that the barge should be placed alongside the schooner by the plaintiffs ; second, that the hay should be put on board the schooner from the barge by them ; third, that, as the hay was thus placed on the schooner by the plaintiffs, the defendants’ man, (Mr. Rixford,) was to take care of it for them, by taking a tally of the hay, from the marks upon the bales, as it was put on board ; involving, of course, the making of such a list or tally as would distinguish the good shipping hay from the clover.
I have been thus particular in stating the evidence and my conclusions thereupon, for the reason, first, that the judge charged the jury, in effect, that if there was anything, under the contract, remaining to be done by the vendors when the fire occurred, the title did not pass ; and secondly, no exceptions were taken to the charge of the court; and because the only exception to a refusal to charge as requested; that requires more than a passing consideration here, was an exception to the refusal of the court to charge the jury “ that the plaintiffs can only recover for the hay actually delivered on board the schooner ; ” a request that covered the entire controversy between the parties, and which would have been, if complied with, equivalent to a direction to find a verdict according to *31 the theory of the defendants’ answer. The question, then, so far as concerns that exception, is, whether the defendants were entitled, upon the uncontroverted evidence, to such a verdict.
A rule of the civil law, which has been incorporated in the French Code, is thus stated ; “ Where goods are sold, not being the whole of an entire lot or parcel, (ne sont pas vendues ’ era bloc,) hut by weight, count, or measure, the sale is perfect only in the sense that the things sold are at the risk of the vendor until they are weighed, counted, or measured; but if an entire lot or parcel has been sold, (marchandises vendues era bloc,) the sale is perfect, although the goods have not yet been weighed, counted, or measured.” ' (Code civ. de Fr., liv. 3, tit. 6, c. 1, art. 1585, 6.) But that arbitrary distinction, although it would, doubtless, have prevented an enormous amount of litigation, has never been recognized either in England, or with us ; the common law rule being that although a contract for the sale of goods be complete and binding in other respects, the property in them remains in the vendor, and they are at his risk, so long as any thing remains to be done under the contract of sale, as between him and the buyer. It is the delivery of the goods, with us, that completes the contract of sale, and vests the title thereto in the purchaser ;• until which event, if postponed, the contract to sell and buy is but a mere executory agreement. If, therefore, (without enumerating other instances not directly pertinent to this case,) the vendor is, by the agreement of sale, to remove the goods to a certain place, where the purchaser is to receive them, the title does not pass at the time of the making of such agreement, nor until the goods are so transferred. So, too, if goods are sold by weight, number, or measure, so that the aggregate price to be paid therefor cannot he ascertained until they are counted, weighed or measured, it is held, as a general rule, that the delivery is not made, nor the title passed, before the quantity of the goods sold, and the aggregate price to be paid therefor, shall have been ascertained and determined ; and that, in the meantime, for the purposes of such weight, count, or measure, the right of possession and the ownership remain in the vendor. *32 (Story on Cont. § 503 et seq. Chitty on Cont. 375 a. Ross on Vendor and Purch. 28. Long on. Sales, 154. Outwater v. Dodge, 7 Cowen, 85. Rapelye v. Mackie, 6 id. 250. Russell v. Nicoll, 3 Wend. 112, Ward v. Shaw, 7 id. 406. Sumner v. Hamlet, 12 Pick. 82. Macomber v. Parker, 13 id. 175. Zaguny v. Furrell, 2 Camp. 240, n. Rugg v. Minett, 11 East, 210. Wallace v. Breeds, 13 id. 522. Simmons v. Swift, 5 5. (6 Cress. 857. 2 Kent’s Com. 495, 6. Joyce v. Adams, 8 N. Y. Rep. 291. Terry v. Wheeler, 24 id. 520.)
The rule that no title is vested in the buyer, before the goods are removed by the vendor, or, until they are weighed, &c. where they are sold by weight, measure, or count, is however, applicable and conclusive only in cases in which the evidence to be found in the contract, considering the condition of the goods and the acts remaining to be done, is insufficient to show that it was 7/ie intention of the parties that the right of possession and ownership of the goods should be vested in the purchaser immediately upon and by the making of the agreement of sale. Where that fact clearly appears, the rule in question is inapplicable. (Riddle v. Varnum, 20 Pick. 280. Kelley v. Upton, 5 Duer, 336.)
There is also another rule to be considered in this case; which is, that where, the seller has done everything that is required of him as to a portion of the goods, but something still remains to be done before delivery, as to the rest, the goods which have been separated and designated by the performance of the required acts, become the property of 'the buyer, and are at his risk ; but the part in respect to which something remains to be done, is at the risk of the seller, and, as to them, the sale is incomplete.
In Crawford v. Smith, (7 Dana, 59,) where a country merchant sold his whole stock at cost and carriage, and seven and one half per cent advance, and he and the purchaser commenced measuring and invoicing the goods, laying them by as they progressed, but, before they had finished, a thief broke into the store and stole some that were invoiced and laid away, and some that were' not, it was held that such of the stolen *33 goods as were not measured and invoiced, remained the property of the seller ; but that those which had been measured, invoiced, and laid aside, had become the property of the purchaser, unless it was the intention of the parties that the goods should be weighed to ascertain the carriage. (See also, Hanson v. Meyer, 6 East, 614; Rugg v. Minett, 11 id. 210; Simmons v. Swift, 5 Barn. & Cress. 857.)
There is no difficulty in this case, arising from the fact that the number of the bales of hay, of each quality, and the weight thereof, as marked upon each bale, had not been ascertained by both parties, by actual examination, before the fire occurred. For, the vendors had taken a correct account, and knew how many bales there were, and their weight and description, and informed the buyers of all that at the time of the making of the contract. The sellers, therefore, did not need to take another account of those matters ; and, for that reason, the jury might well have arrived at the conclusions, upon the evidence, that there was nothing, in that regard, remaining to be done, as between the parties, after the contract of sale and before, delivery. The buyers, certainly, had a right, for their own satisfaction, to examine the hay, bale by bale, to ascertain whether the statement touching the number, weight, and quality, which had been made to them by the sellers, was correct or not, and to take a tally and account. But the vendors, although they were entitled to • be present and to participate in the taking of such account, were not bound, as between seller and purchaser, to do so; but might, at their option, waive the exercise of such right; and they not only did so by omitting to appear and take a part in such examination, but the buyers seem to have acquiesced therein by taking the account in their absence.
But the question as to where and how the hay was to be delivered to the purchasers under the contract, as it was understood by both parties, is of quite a different nature. Even if no express provision had been made in the contract itself in that regard, the facts that five hundred bales of the hay were stowed away in the barge’s hold, where it must have *34 been impossible for the' buyers to reach and examine every bale, with the marks thereon, for the purpose of ascertaining the quality and quantity of the hay, even if they might have examined and taken an account of the seven hundred bales which were piled upon her deck, and that it was well understood between the parties that the hay was to be transferred, from the barge to the schooner, bale by bale, coupled with the further fact that the vendors, through their employees, actually transferred all that was placed upon the schooner, were, certainly, sufficient, in the absence of any evidence leading to a different conclusion, to justify the jury in finding that the vendors were, under the contract, as it was understood and acted upon by both parties, to make such transfer ; even if a finding to the contrary, if it had been made, ought not to have been set aside as against the evidence. Let that be as it may, however, the clear, positive, and uncontradicted evidence of the plaintiff Sutherland, himself, shows, not only that the vendors were, by the contract of sale, to remove the hay from the barge to the schooner, but that they, through their employees, were actually engaged in doing so when the fire occurred. This, taken in connection with the further facts in the case, above adverted to, conclusively proved that the plaintiffs were to deliver the hay by transferring it, bale by bale, from their barge to the. schooner of the defendant, and that they did so transfer and deliver 122 bales and only that number. The jury, therefore, were required by the direction which was given to them by the court, touching the question of delivery, to find a verdict for the plaintiff's for the value of the 122 bales, and no more; and their verdict having been rendered in favor of the plaintiffs for the entire amount claimed by them, the judgment thereupon entered must be set aside, because such verdict was contrary to the charge of the court.
It follows, of course, that the court erred in refusing to charge that the plaintiffs were only entitled to recover for the hay actually delivered on board 'the schooner.
Except for the question of .costs, it would be quite immaterial whether the error for which "the judgment is reversed, *35 was that of the court, or of the jury. But where the judgment appealed from is reversed, for the reason that the verdict is contrary to the charge, the costs of the appeal are charged to the appellant, while the costs of appeal on reversal because of an error of the court, are awarded in his favor. In this case, neither of those" rules can, properly, prevail.
The judgment should be reversed, and a new trial directed, with costs of appeal to the party who shall eventually succeed upon the issues; unless the plaintiffs shall, within ten days from the service of the order to be entered hereupon, elect to reduce the damages in the judgment to the value of the 122 bales of hay which were delivered, with interest, to be ascertained and fixed by the contract, and the testimony of Mr. Rixford, at fol. 114 of the case ; in which event, the judgment should be amended accordingly ; but no costs on appeal ought to be given to either party.
Judgment and order affirmed.