Hamburger *v.* Rodman.

-------

JOSEPH W. HAMBURGER, Respondent, *against* CHARLES W. RODMAN, *et al.*, Appellants.

(Decided March 1st, 1880.)

Upon a sale of goods on credit, a delivery of a part of the goods to the buyer does not prevent the lien of the seller for the price attaching to the part remaining in his possession, upon the buyer afterwards becoming insolvent; and a resale of the goods by the buyer, even to a *bonâ fide* purchaser, in no way affects the vendor's lien, unless the sale was made with the vendor's knowledge and approval.

The purchasers of a quantity of walnut logs gave their promissory note payable at a future day, for the price; and it was agreed, as part of the terms of the sale, that the logs should remain in the seller's yard, free of storage, for a certain time, the purchasers to send for them whenever they pleased within that period. At the request of the purchaser, and to enable them to resell, a bill containing an enumeration of the number of feet in the logs was delivered to them by the sellers. Subsequently the purchasers resold the logs to the plaintiff, who paid them the price in cash, and received from them a bill, without having seen the bill given by the original vendors, or having communicated with the latter in any way respecting the ownership of the logs; although before such resale he was seen by one of the original vendors in their yard, engaged in an

examination of the logs, in company with one of the original purchasers. Part of the logs were afterwards delivered, on a verbal order of the original purchasers, to trucks, which carried them to a mill where they were sawed for the plaintiff. Before any further delivery, and before the note given by the original purchasers became due, they failed. *Held*, that the lien of the original vendors for the price attached to the logs remaining in their possession, upon the insolvency of the original purchasers, even as against their vendee, the plaintiff, a purchaser in good faith; the resale to him not appearing, under the circumstances, to have been made with the knowledge and approval of the original vendors; and as they had done nothing to lead the plaintiff to make the purchase, the case did not come within the application of the rule that where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it.

APPEAL from a judgment of the marine court of the city of New York.

The action was brought to recover the possession of a quantity of walnut logs. The facts are stated in the opinion. At the trial, the jury found a verdict for the plaintiff, by direction of the court. From the judgment entered upon the verdict, the defendants appealed to the general term of the marine court, which affirmed the judgment. From this judgment the defendants appealed to this court.

*Thomas H. Rodman*, for appellants.—The title and right of possession to the property in question passed to Miller, but not the possession, actual or constructive. The latter remaining in Rodman & Hepburn till after Miller's insolvency, their vendor's lien revived on that event, it having been waived by the sale on credit, on the implied condition that Miller should keep his credit good (Benjamin on Sales, 1° Am. ed. §§ 766–782, 796–828; *Arnold* v. *Delano*, 4 Cush. 33; *White* v. *Welsh*, 38 Pa. St. 420; *Thompson* v. *Baltimore & O. R. R. Co.*, 28 Md. 406; *Hunter* v. *Talbot*, 3 Sm. & M. 754; *Ingersoll* v. *Kendall*, 13 Id. 616; *Milliken* v. *Warren*, 57 Me. 47; *Siegerson* v. *Kohmann*, 39 Mo. 208; *Southwestern, &c. Co.* v. *Stanard*, 44 Mo. 71; *Barrett* v. *Goddard*, 3 Mason, 107, contra, has been repudiated by the above authorities, and especially by *Parker* v. *Byrne*, 1 Lowell, 540). There may be a

constructive delivery, sufficient to vest the title in the vendee and authorize him to take the goods at any time before insolvency, and yet not an actual delivery that puts an end to the vendor's right to hold for the price (Benjamin on Sales, §§ 768, 769, 805, 806; *Miles* v. *Gorton*, 2 Cr. & M. 504; *Thompson* v. *Baltimore & O. R. R. Co.*, 28 Md. 407; *Stiles* v. *Howland*, 32 N. Y. 314; *Buckley* v. *Furniss*, 17 Wend. 504). A second vendee, who neglects to take either actual or constructive possession, is in the same situation as the first vendee under whom he claims; he gets the title defeasible on the non-payment of the price by the first vendee (*Dixon* v. *Yates*, cited in Benjamin on Sales, § 775; *McEwan* v. *Smith*, 2 H. L. Cas. 309).

*F. A. Burnham*, for respondent.—By a delivery of the property, either actual or constructive, the vendor's lien is gone, and it cannot thereafter be revived, even upon the insolvency of the purchaser (Benjamin on Sales, 2 Am. ed. § 799; *Parks* v. *Hall*, 2 Pick. 206–212). The facts are equivalent to an actual delivery (Benjamin on Sales, § 774; *Barrett* v. *Goddard*, 3 Mason, 107; *Hunn* v. *Bowne*, 2 Cai. 38; *Western Transp. Co.* v. *Marshall*, 37 Barb. 509); or at least make out a clear case of constructive delivery, sufficient to defeat the seller's lien (*Brewer* v. *Salisbury*, 9 Barb. 511). The delivery of part of the logs was of itself sufficient to divest the lien (Smith Merc. Law, 7 ed. 495; 3 Parson Contr. 257; *Copland* v. *Stein*, 8 T. R. 199; *Parks* v. *Hall*, 2 Pick. 206). Applying the doctrine that "when one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it," the loss in this case must fall upon the defendants (*Lickbarrow* v. *Mason*, 2 T. R. 63; *Rawls* v. *Deshler*, 3 Keyes, 572; *Hollingsworth* v. *Napier*, 3 Cai. 182). The defendants are estopped from disputing the sale to the plaintiff, or from setting up their alleged lien as against him (Benjamin on Sales, 2 Am. ed. §§ 774, 777; *Pearson* v. *Dawson*, El., Bl. & El. 448; *Woodley* v. *Coventry*, 2 Hurlst. & C. 164; 32 L. J. Exch. 185; *Knights* v. *Wiffen*, L. R., 5 Q. B. 660; *Clews* v. *Bank of N. Y. Nat. Bank*

*Assoc.*, N. Y. Daily Reg. of Jan. 6, 1880 ; *Jackson* v. *Cator*, 5 Ves. 688 ; *Continental Nat. Bank* v. *National Bank of the Commonwealth*, 50 N. Y. 575).

CHARLES P. DALY, Chief Justice.—The only opinion delivered in the court below, upon the affirmance of the judgment, was by Judge SHERIDAN, who dissented ; and the dissenting opinion, which contained a careful examination of the facts, was correct in its conclusion that the judgment should have been reversed.

There is a well-recognized distinction between a delivery that is sufficient to transfer the title of the goods to a vendee, or which will satisfy the statute of frauds, and a delivery that will divest the vendor of his lien for the price, or right to stop the goods in transitu, upon the insolvency of the buyer (*Arnold* v. *Delano*, 4 Cush. 33 ; *Thompson* v. *Baltimore*, *&c. R. R. Co.*, 28 Md. 407 ; *Matthews* v. *Hobby*, 48 Barb. 167 ; Hilliard on Sales, 2 ed. 265, 286). The right to retain the goods, or to stop them in transitu, upon the insolvency of the vendee, is an equitable right founded on principles of natural justice (*Withers* v. *Lys*, Holt P. of C. 20, note). Lord HARDWICK said, in *Snee* v. *Prescott* (1 Atk. 250), that if, after the buyer has stopped payment, the vendor gets the goods back again by any means short of stealing them, it would be inequitable to take them from him.

If the goods are sold upon credit, and are left in the custody of the vendor, and before the term of credit expires the buyer becomes insolvent, the vendor's lien for the price, which was before suspended, revives, and they cannot be taken from him, nor any part of them, unless the price is paid (*Griffiths* v. *Perry*, 1 El. & E. 680; *Miles* v. *Gorton*, 2 Cr. & M. 504; *Valpy* v. *Oakley*, 16 Q. B. 952 ; *McEwan* v. *Smith*, 2 H. L. Cas. 309 ; *Arnold* v. *Delano*, 4 Cush. 33 ; *Milliken* v. *Warren*, 57 Me. 47 ; 2 Kent's Comm. 4 ed. 493 ; Benjamin on Sales, §§ 767, 769, 770, 772, 825 ; Hilliard on Sales, c. XVI., XVII., 2 ed.).

It is claimed in this case, that, although the property had never been removed from the defendant's yard, there was such

a delivery of it there, to the purchaser, that there could be no revival of the vendor's lien for the price, upon the purchasers becoming insolvent. The facts are as follows: Miller & Sons bought of Rodman & Hepburn, the defendants, forty-three walnut logs, for which they gave their promissory note, payable at a future day. By the agreement of the parties, the privilege was granted to Miller & Sons, of allowing the logs to remain in the defendants' yard, for four to six weeks, free of storage, which was one of the inducements to the sale, Miller & Sons having the right to send for them whenever they pleased within that period. A few days afterward, when a return had been made of the number of feet of the forty-three logs, Miller called at the defendant's yard, saying he wanted the return to enable him to make a sale, and received from the defendants a bill, containing an enumeration of the number of feet in each of the logs. This was a complete sale, which vested the title to the property in Miller & Sons, subject, however, to a revival of the vendor's lien for the price, if, before the expiration of the time of credit, Miller & Sons should become insolvent; and the logs or any portion then remained in the actual custody of the defendants.

Miller brought the plaintiff to the defendant's yard, and one of the defendants passed through the yard, and saw them together engaged in the examination of the logs; but no communication was had by him with either of them, except merely to say " good-morning." Miller & Sons sold the logs to the plaintiff, giving him a bill for them, made out in the name of that firm, and the plaintiff paid for them in cash, and as the jury must have found, Miller afterwards told Hepburn, one of the defendants, of the sale, which Hepburn denied, testifying that he knew nothing about it. Shortly afterwards, Miller left a verbal order at the defendant's office, for the delivery of nine of the logs, to two trucks; which were accordingly delivered and brought to a mill in Attorney street, where they were sawed up for the plaintiff. Before any further delivery, and before Miller & Sons' note became due, that firm failed. Two or three weeks after the failure, the plaintiff went to the defendants and demanded the remainder of the logs; and one of

the defendants told him that he could not deliver the residue, as Miller & Sons had failed; that he had a claim upon them, and that he did not know that he could deliver the logs under any circumstances without Miller & Sons' order.

As respects the question of possession, and the rights incident to it, the case is not substantially different from *Townley* v. *Crump* (4 Ad. & El. 58). In that case the defendants sold to one Wright twenty-nine pipes of wines, the purchaser giving an acceptance payable in three months, and by agreement between the parties the wine was left in a bonded warehouse belonging to the defendants, who gave the purchasers an invoice, describing the wine by marks and numbers, and also a delivery order; the sale being in all respects complete, and the title to the wine vesting in the vendee. Before the acceptance fell due, the purchaser failed; the bill was dishonored; and he having become a bankrupt, the wine was demanded of the defendants by the assignee in bankruptcy, as a part of the bankrupt's assets; but the defendant refused to deliver it, as the acceptance had not been paid.

It was held that under these circumstances, the vendor's lien for the price revived and attached to the property; and that it was in no way affected by the defendants having given to the purchaser a delivery order. *Miles* v. *Gorton* (2 Cr. & M. 504) was even much more in point. There the goods were left in the custody of the vendor, for the convenience of the vendee, who agreed to pay rent for the storage of them; and while the note was running, as in the present case, a part of the goods were delivered, and the purchaser afterwards becoming bankrupt, and the note being dishonored, it was held that the vendor had a right to retain the residue, until the price was paid. And in *McEwan* v. *Smith* (2 H. L. Cas. 309), it was held that a delivery order, though such orders are given for the purpose of enabling the vendee to resell the goods, will not operate to divest the vendor of his lien for the price, where the goods are in his custody, and the purchaser has become insolvent. The case of *Barrett* v. *Goddard* (3 Mason, 107), on which the plaintiff relies, is the decision of a single judge, STORY, J., which stands alone, unsupported and in conflict with

subsequent cases, where the question was more fully considered by the whole court, and more satisfactorily disposed of. Judge STORY puts his decision upon the remarks of Lord ELLENBOROUGH in *Hurry* v. *Mangles* (1 Camp. 452), "If I pay for part of a warehouse, so much of it is mine," and his decision in that case, that the acceptance of warehouse rent, by the vendor, was a complete transfer of the goods to the purchaser, and "an executed delivery by the seller to the buyer" without distinguishing that, in that case, the warehouse rent was paid by the *sub-vendee* to whom the goods had been resold, which made the vendor his agent in the storing of them, as was pointed out by BAYLEY, J., in *Miles* v. *Gorton, supra,* in which it was held that an agreement by the vendee, after the purchase, to pay rent to the vendor for storing the goods, did not have the effect of making the warehouse of the vendor the warehouse of the vendee, and constitute such a delivery of the goods to the vendee as to prevent any lien, thereafter, of the vendor, reviving for the price. The other two cases cited by the plaintiff, of *Brewer* v. *Salisbury* (9 Barb. 511), and *Woodford* v. *Patterson* (32 Id. 630), simply hold, that the delivery was sufficient under the statute of frauds, which was also the case here.

In the present case there was a partial delivery of the property upon Miller & Sons' verbal order to the plaintiff; but as was held in the cases already cited of *Griffiths* v. *Perry* (1 El. & E. 680), *Miles* v. *Gorton* (2 Cr. & M. 504), and also in *Tanner* v. *Scovell* (14 Mees. & W. 28), *Wincks* v. *Hassall* (9 B. & C. 372), *Jones* v. *Jones* (8 Mees. & W. 431), and *Dixon* v. *Yates* (5 B. & Ad. 313; 2 Nev. & M. 177), that did not prevent the defendant's lien reviving upon the subsequent insolvency of Miller & Sons, and attaching to the residue of the logs remaining in their custody. A partial payment of the price, or the delivery of a part of the goods to the vendee, does not, if the goods, or any part of them, remain in the custody of the vendor, prevent his lien for the price attaching to the goods, if the vendee afterwards becomes insolvent, and the resale of the goods, in such a case, in no way affects the vendor's lien, unless the sale is made with his knowledge and approval (*Craven*

v. *Ryder*, 6 Taunt. 433 ; Benjamin on Sales, §§ 769, 774, 805, 806 ; *Williams* v. *Moore*, 5 N. H. 235 ; *Bunney* v. *Poyntz*, 4 B. & Ad. 568, per TENTERDEN, C. J. ; *Buckley* v. *Furniss*, 17 Wend. 504; Long on Sales, 264, Am. ed. ; *Fiese* v. *Wray*, 3 East, 93 ; *Hodgson* v. *Loy*, 7 T. R. 440 ; *Spears* v. *Hartley*, 3 Esp. 81 ; *Duncan* v. *Lewis*, 1 Duv. 183).

The rule is otherwise, however, where the whole of the property is in the course of delivery, as in the delivering of a cargo ; in which case the vendor cannot arrest the completion of the delivery, so that his lien may attach to the residue (*Slubey* v. *Heyward*, 2 H. Bl. 504 ; *Jones* v. *Jones*, 8 Mees. & W. 431 ; *Hammond* v. *Anderson*, 4 Bos. & P. 69). Or where the vendor has agreed to deliver the property to a third party, who has paid the vendee for it, and he is in the act of delivering the whole, but refuses to complete the delivery upon hearing that the vendee has absconded (*Palmer* v. *Hand*, 13 Johns. 434).

It does not appear that the defendants did anything which led the plaintiff to purchase the property from Miller & Sons, upon the assumption that it was the property of that firm, as in *Hunn* v. *Bowne* (2 Cai. 38), where the plaintiffs, who were innocent *bona fide* purchasers, went to the vendor's store to see the cotton, which the vendee had offered to sell them ; and the vendor showed it to them as the cotton of the vendee.

Whatever effect, if any ( *Western Transp. Co.* v. *Marshall*, 37 Barb. 514), might be given to the bill which the defendants gave to Miller & Sons, containing an enumeration of the number of feet in each log, it does not appear, from the evidence, that it was shown to the plaintiff ; in addition to which it contained the measurement of forty-three logs, and the quantity sold by Miller & Sons to the plaintiff was less, being forty-two logs. It is not a case, therefore, for the application of the rule invoked by the plaintiff, that where one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must sustain it ; for the defendants did nothing, in this case, to lead the plaintiff to make the purchase (*Muller* v. *Pondir*, 55 N. Y. 335). He simply bought property from Miller & Sons, which was lying

in the defendants' yard, without asking them whether they had sold it for cash, or on credit, or caring to make any inquiries of them respecting it. He simply bought property from a firm who, having afterwards become insolvent, were unable to have the whole of it delivered to him, as the residue remained in the vendor's custody, and their lien for the price had revived and attached to it ; and their equitable right to retain it, under such circumstances, is as strong as the plaintiff's claim, that they should deliver it to him, because he had bought it, lying in their yard, from a firm who, as it subsequently turned out, were unable to pay for it (*Ballard* v. *Burgett,* 40 N. Y. 314).

The judgment for the plaintiff should therefore be reversed.

VAN BRUNT, J., concurred.

Judgment reversed, with costs.

Application was subsequently made for leave to appeal to the court of appeals.

JOSEPH F. DALY, J.—There seems to be no good reason for sending this case to the court of appeals. The fact that that court has not yet passed upon the precise question is no ground for granting the motion. The law of the case is not unsettled, as the chief justice, in the careful opinion delivered on the reversal of the judgment, clearly shows.

As to the evidence which respondent claims that this court misapprehended or overlooked, *i. e.*, that the bills of numbers were not shown to the plaintiff, it is clearly immaterial whether they were shown or not. As long as the goods were in the actual possession of the defendants, they were not cut off from asserting their lien. The lien for the price could not exist unless there had been a sale, and the utmost effect which the exhibition of those bills could have had on plaintiff was to convey the information of such sale. There was no representation that the price had been paid.

The silence of defendants, when informed of the sale to plaintiff, did not destroy their lien ; only the omission to assert

it on demand of the goods, would be fatal to them (*Graham v. Fitzgerald*, 4 Daly, 178–181).

The motion should be denied.

VAN HOESEN, J.—The point involved is disposed of by the rule laid down in Benjamin on Sales, § 779. " Thirdly, the rights of the unpaid vendor are the same against a sub-vendee as against the original buyer, unless he be precluded by the estoppel resulting from his assent, express or implied, to the sub-sale when informed of it."

The opinion of the chief justice meets the whole case, and every point in it.

Leave to go to the court of appeals should be denied.

CHARLES P. DALY, Ch. J., concurred.

Motion denied.