CASE 49—PROCEEDING BY J. H. FUQUA, SUPERINTENDENT OF PUBLIC IN-
STRUCTION, AGAINST S. W. HAGER, AUDITOR, TO RECOVER CERTAIN
FUNDS AS BELONGING TO THE SCHOOL FUND.—JAN. 10.

# Fuqua, Supt. Public Instruction v. Hager, Auditor.

APPEAL FROM FRANKLIN CIRCUIT COURT—JOHN D. CARROLL, SPECIAL
JUDGE.

JUDGMENT FOR DEFENDANT.  PLAINTIFF APPEALS.  AFFIRMED.

SCHOOL FUND—TAX ON FOREIGN INSURANCE COMPANIES.

The $2 on each $100 of premiums paid by foreign insurance companies doing business in the State, which is required to be paid into the State treasury, is no part of the 22 cents on each $100 valuation of property or corporate franchises directed to be assessed for taxation for the school fund by Kentucky Statutes 1903, sec. 4370, subd. 5, nor is it a fine, forfeiture or license within subdivision 6, providing that a portion of such revenues be paid into the school fund.

HAZELRIGG & HAZELRIGG, ATTORNEYS FOR APPELLANT.

The brief of the appellant not being in the record, the Reporter takes the following extract from appellant's petition for rehearing:

1. If we stop a moment before going into a brief analysis of the matters involved, to ask the reason how it is that the Legislature could ever have intended that common schools should be given a share of every particle of the moneys coming into the treasury from taxes levied on real and personal estate and cor-

porate franchises, including intangible property, and of all fines and forfeitures and licenses, except a share of license taxes paid in by foreign insurance companies, we should find, doubtless, that we had asked a hard question to answer. We are sure this court could give no reason why this particular tax money of all other should be too sacred to find its way to the children's fund, and we can imagine no reason whatever why the Legislature ever intended such a peculiar thing.

2. An examination of the departments show that the statute, which, in practically the same language as is used as to insurance companies, imposes a tax of $2 on the $100 of the gross receipts received by foreign building and loan companies doing business in Kentucky, has always been construed by the departments to give the school fund its proper share of such receipts.

3. The tax on foreign building and loan associations is a tax on "the privilege of doing business in Kentucky." The tax on foreign insurance companies is precisely the same. B. & L. v. Norman, 98 Ky., 300; Fidelity, &c. v. City of Louisville, 106 Ky., 207.

4. In view of the manifest intention of the Legislature to give the school fund a share of all moneys coming into the treasury, why should we gather an intent to limit the word "licenses" to include only the insignificant class of retailing liquors, selling playing cards, etc.

5. The moneys realized from "licenses" can come in two forms: First, from license fees, and, second, from license taxes. In both these forms the fee or the tax is the burden imposed on a party proposing to engage in a given business for the privilege of doing that business.

6. We contend that the statute means to include all moneys coming from "licenses," whatever may have induced the imposition of the license fee or license tax. That this tax of $2 on the $100 is a tax on the right to do business in Kentucky, and, therefore, a license tax, is not an open question. B. & L. v. Norman, 98 Ky., 300; Fidelity, &c. v. City of Louisville, 106 Ky., 207.

7. The school children should not be made to do without what the statute seems to give them, because of some supposed confusion. The departments are working in the utmost harmony, and we do not apprehend the slightest confusion.

McQUOWN & BROWN AND HENRY R. PREWITT, ATTORNEYS FOR APPELLEE.

1. That the tax in controversy is not a tax on real estate needs no argument.

Fuqua, Supt. Public Instruction, v. Hager, Auditor.

2. That it is not a tax on corporate franchise was decided in Aetna Life Ins. Co., &c. v. Coulter, Auditor, 115 Ky., 787.

3. It is equally clear that it is not a tax on personal estate.

4. We contend that there is a difference between a "license tax" and "licenses."

5. Under Kentucky Statutes, sec. 634, foreign insurance companies are not required to procure a license before doing business in this State.

6. It was not the legislative intent to give to the common school fund a portion of all State revenue, but that such fund shall have only such part as is specifically set apart to it by the Constitution and legislative enactments.

7. The tax of $2 cn each $100 in premiums is not a license tax, but a tax on income or receipts. Such tax is authorized under Constitution, sec. 174.

8. For a period of thirty-four years the present auditor and his predecessors in office have construed the statute as now contended for by appellee, and during all that time the legislators have met and reapportioned the State revenue with report of the auditor before them, with the statement that these taxes from the foreign insurance companies were being passed to the general expenditure fund, and we contend that this long period of construction by the executive and approval by the legislative branch of the government is entitled to great weight and should control in the construction of the statute by the court, leaving to a future Legislature to remedy the defect, if any there be.

N. B. HAYS, ATTORNEY GENERAL.

The question presented by this appeal is, whether or not a part of the license tax on foreign insurance companies of $2 on each $100 of premiums forms part of the common school fund of this State.

1. It is the contention of the State that it is a license tax, has always been so held and treated, and that the part which should be set apart to common schools is governed by subsection 6 of section 4370, Kentucky Statutes. This tax is imposed for the purpose of revenue.

2. From section 4370 it seems clear that it was the purpose and intention of the Legislature that a part of all taxes, under whatever form or name known, should be set apart for education in the common schools.

3. There has been no contemporaneous construction of this statute by any former superintendent or auditor, further than no former superintendent ever demanded of any auditor to set apart a portion of this fund for the common schools, nor did any former

auditor refuse to do so. Their attention was never called to it, and no court has ever passed on this statute. It is only when a statute is doubtful and ambiguous that contemporaneous construction for a long period of time will be resorted to to give a construction to a statute.

We contend that the judgment of the lower court is not the correct construction of the statute in question, and we ask that the same be revised and a construction placed upon it that will carry out the will and intent of the Legislature.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

By the statutes of this State foreign insurance companies are required on the 1st day of July in each year to return to the Auditor of Public Accounts a statement under oath of all premiums received since their last report, and at the same time pay into the State treasury a tax of $2 upon each $100 of premiums received. The Superintendent of Public Instruction, conceiving that a part of the funds arising from this tax should be paid into the school fund, brought this action against the auditor, charging that something over $130,000 was due on this account to the school fund for the present fiscal year, and praying judgment therefor. The circuit court sustained a demurrer to the petition, and the superintendent appeals.

By section 4019, Kentucky Statutes, 1903, an annual tax of 50 cents is levied upon each $100 of value of all property assessed for taxation: Twenty-two and one-half cents for the ordinary expenses of the government, twenty-two cents for the support of the common schools, five cents for the use of the sinking fund, and one-half of one cent for the Agricultural and Mechanical College. In section 4370, Kentucky Statutes, 1903, in specifying what shall constitute the school fund, after other provisions not here material, are the following: "(5) The annual tax of twenty-two cents on each one hundred dollars of value of all real and personal estate and cor-

porate franchises directed to be assessed for taxation.  (6)
Such portions of fines, forfeitures and licenses which may
be realized by the State as the amount of taxes for common
school purposes bears to the whole State tax other than for
the benefit of the Agricultural and Mechanical College." The
money paid into the treasury by the foreign 'insurance com-
panies on account of the tax of $2 upon each $100 of premi-
ums collected by them is no part of the annual tax of twenty-
two cents on each $100 of value of real or personal estate or
corporate franchises directed to be assessed for taxation,
but is an entirely different tax, and therefore subdivision 5
has no application.  But it is earnestly argued that this tax
is included by the words "fines, forfeitures, and licenses" in
subdivision 6, and therefore the portion of the tax indicated
in this subsection should be paid into the school fund.  It
is not contended that the tax is a fine or forfeiture, but it
is insisted that it is, in effect, a license tax, and is therefore
included within the statute.  But it will be observed that
the statute does not use the expression "license taxes;" its
language is "licenses." The statute provides for a number
of licenses—such as for retailing liquors, selling playing
cards, bowie knives, licenses to pawnbrokers, bowling alleys,
circuses, oil depots or wagons, standing a stud, jack, or bull,
peddling, rectifying, etc. In all these cases the license must
be taken out in advance, and is required to be then paid for.
A penalty is imposed if the business is carried on without
license.  The word "licenses" in the statute before us would
aptly refer to this fund, but the fund paid in by the insurance
companies is paid in at the end of the year, and is directly a
tax upon their receipts or income, and while it is in one
sense a license tax we are satisfied it was not
contemplated by the Legislature when it used the word "li-
censes" in the statute above quoted.  This mode of taxing
foreign insurance companies has been in vogue in this State

for about sixty years, and during all that time no part of the tax had ever been paid to the school fund. This has been the rule followed under several revisions of the statutes, and was necessarily familiar to the Legislature, and if it had contemplated a change of a rule so well understood it must be presumed it would have used language more clearly indicating such an intention. The present act was passed on July 6, 1893, and has been so construed by all the departments of the government from that time until the present controversy arose. The contemporaneous construction of the statute through several administrations is not without force. And, besides all this, the present revenue act was passed by the General Assembly in the year 1902, and in fixing the amount of the school tax and the tax for the general expense fund presumably the Legislature acted in view of the construction of the statute then in force. As shown by the last auditor's report there was a considerable deficiency in the general expense fund, and, if the money were now taken from the treasury and put into the school fund as sought by appellant, the fiscal affairs of the State would be put in inextricable confusion, and there would be a large deficiency in the general fund, perhaps for the whole time not less than $1,000,000. It can not be presumed that the Legislature in fixing the tax for the general expense of the government intended to fix an amount so inadequate as appellant's contention would require us to conclude.

Judgment affirmed.