CASE 28.—PROSECUTION AGAINST J. T. DOORES FOR A.
VIOLATION OF THE LOCAL OPTION LAW.—October 17.

## Doores v. Commonwealth.

Appeal from Barren Circuit Court.

SAMUEL E. JONES, Circuit Judge.

Defendant convicted and appeals.    Reversed.

1. Intoxicating Liquors—Local Option—Evasion of Law—The act
of a person, whose place of business was outside of local
option territory, in telling a person who resided within such
territory that he would be glad to sell him liquor if he wanted
it, could not be considered a trick or device to evade the
local option law, within the prohibition of Ky. Stats. 1903,
sec. 2570, where the sale which subsequently took place pur-
suant thereto constituted as a matter of law a sale outside
of local option territory.

2. Same—Sales Outside of Prohibited Territory—C. O. D. Ship-
ments—Defendant was a liquor dealer in W. county, where
the sale of liquor was lawful.  While on a trip into B. county,
where local option was in force, he told a friend there that
he would sell him liquor if he wanted it.  His friend did not
buy anything from him at that time, nor was any order for
liquor then proposed.  About six months or a year later the
friend wrote or telephoned to defendant, who was then in
W. county, for liquor.  Defendant accordingly sent the liquor
by express, and subsequently received a money order from
his friend in payment therefor.  Held—That the shipment of
liquor, not being made C. O. D., was not within Ky. Stats.
1903, sec. 2557b, subd. 4, declaring C. O. D. shipments of liquor
into local option territory to be unlawful, and to be deemed
sales of liquor at the place where the money is paid or the
goods delivered, but was to be deemed a sale in W. county,
and lawful as such.

J. A. CONYERS and SIMS & GRIDER for appellant.

Doores v. Commonwealth.

## SYNOPSIS OF THE CASE.

1. The demurrer to statement should have been sustained. (Sec. 11 of Criminal Code; sec. 1141, Ky. Stats.; L. & N. R. R. v. Commonwealth, 23 Ky. Law Rep., 1900.)

2. The court erred to the prejudice of appellant in admitting the testimony of Joe Ellison and Brent Dickinson.

3. The court erred in refusing to give to the jury a peremptory instruction to find defendant not guilty. (James v. Commonwealth, 19 Ky. Law Rep., 1045; Russell v. Commonwealth, 11 Ky. Law Rep., 576; 2 Kent, 492; Keller v. State, 87 S. W., 669.)

4. The court erred in giving to the jury as the law of the case instructions Nos. 1, 2, 3, 4 and 5.

BAIRD & RICHARDSON, D. F. WOOD and J. C. HUTCHINSON for appellant.

N. B. HAYS, Attorney General, and C. H. MORRIS of counsel.

1. The settled policy of the law, and the sole purpose of the statute, is to prevent vendors of spirituous liquors from going into and selling, or by any method selling, in any local option territory, their goods and to reach all shipments into such territory.

2. If there is any evidence tending to show the guilt of the accused, this court can not, under sec. 353, Crim. Code provision, reverse on account of the insufficiency of the evidence. It was the province of the jury to determine and weigh the testimony and determine of the real truth of the transaction. And under any instructions that might have been asked or given to the jury, the fact that the appellant, through the facile agency of the telephone and express company, was not only guilty of the offense charged, but had been for more than one year a "walking blind tiger" in Barren county.

### AUTHORITIES CITED.

Rush v. Commonwealth, 20 Ky. Law Rep., 775; Doores v. Commonwealth, 25 Ky. Law Rep., 459; Rowe v. Commonwealth, 24 Ky. Law Rep., 974; Penner v. Commonwealth, 23 Ky. Law Rep., 774; Griffin v. Commonwealth, 23 Ky. Law Rep., 1992; Adair v. Commonwealth, 21 Ky. Law Rep., 1819; Teal v. Commonwealth, 22 Ky. Law Rep., 350; Smith v. Commonwealth, 17 Ky. Law Rep., 416; Crigler v. Commonwealth, 27 Ky. Law Rep., 920; Henkle v. Commonwealth, 23 Ky. Law Rep., 1981; Ky. Stats., secs. 2557b

and 2570; James v. Commonwealth, 19 Ky. Law Rep., 1095; Crim. Code, sec. 353.)

OPINION BY JUDGE BARKER—Reversing.

This is a proceeding by information under sec. 1141, Ky. Stats. 1903, against the appellant, J. T. Doores, charging him with the offense of selling whisky by retail to Emmett Williams in Barren county, Ky., contrary to the local option law prevailing therein. Upon the trial of the case the jury found the defendant guilty, and fixed his punishment at imprisonment in the county jail for forty days and a fine of $100, and judgment was entered accordingly. As we see it, the main, and perhaps only, question for adjudication, is whether or not the defendant was entitled to a peremptory instruction to the jury to find him not guilty after all the evidence for the Commonwealth was in.

The testimony in this case lies in a very small compass, and we therefore give it verbatim in all essential parts. Upon the main issue of the sale the Commonwealth introduced one witness only, Emmett Williams, who testified as follows: "I live in Glasgow. Saw Mr. J. T. Doores in my blacksmith shop over a year ago. He said, if I wanted anything in his line, he would like to sell it to me, or words to that effect. I said, 'all right.' Didn't buy anything from him then, nor did he offer to take any order then. I did buy some whisky from him about that time. I had not bought any before the conversation. I don't know how long that conversation with him was before this sale; maybe six months or a year. I ordered a gallon of whisky from him in April, 1905. I either called him up on phone or wrote to him at Bowling Green, Ky. He sent whisky from Bowling Green to me at Glasgow by Adams Express Com-

pany. I received it at Adams Express office in Glasgow. After that I wrote him to send me my account. He did so, and I mailed him a money order to Bowling Green, Ky., in payment. I see him in Glasgow once in a while. We are good friends. Can't say order for whisky was made in pursuance to his personal solicitation. I had been dealing with him about a year in April, 1905.''

Another witness, Joe Ellison, testified as follows: ''I know Mr. Doores. Have known him five years. I am in the hotel business in Glasgow. He comes to Glasgow about every six weeks; maybe not so often. Has a little grip with him. He has been coming that often for the last year. I don't know what he comes for. Never saw or heard him try to get orders for whisky in Glasgow. Don't know what is in his grip. His business in Bowling Green is wholesale and retail whisky business.''

Brent Dickinson, the Adams Express Company's agent at Glasgow, said: ''I am agent for Adams Express Company at Glasgow. I know Mr. Doores. Since the first of the year I have seen him in Glasgow every month or six weeks. Don't know what he is here for. Never saw or heard him solicit orders for whisky. For two years he has been shipping whisky through my office, from 1 to 5, and sometimes 50, packages a day; some one-half gallon jugs and some five gallon packages. For one-half gallon to five gallon jugs, there is a card on the packages, with the words, 'J. T. Doores, Wholesale Liquor Dealer, Bowling Green, Ky.,' on it. Have seen tin cups tied to jugs, with these words printed in the bottom. These packages of whisky are to parties in Barren, Metcalfe and Monroe, also Cumberland counties.''

This was all the evidence heard in the case. We

do not think this testimony established a sale in
Barren county by the terms of the C. O. D. statute
contained in sec. 2557b, Ky. Stat. 1903, for the rea-
son that the whisky in question forwarded from
Bowling Green to Williams at Glasgow was not
shipped C. O. D. There was no contract for the sale
of the liquor made in Barren county. The evidence
shows that, at least a year before the sale charged
in the information, Doores was in Glasgow, and
called on Williams at the latter's blacksmith shop,
and told him that if he wanted anything in his
(Doores') line he (Doores) would like to sell it to
him. No contract was made at that time, but shortly
afterwards Williams did buy whisky from the de-
fendant, but not the whisky in question. On that
subject the witness said: "I don't know how long
that conversation with him was before this sale;
maybe six months or a year." And again: "We are
good friends. Can't say order for whisky was made
in pursuance to his personal solicitation. I had been
dealing with him something like a year in February,
1905." The particular sale in question was made
as follows: "I either called him up on the phone,
or wrote to him at Bowling Green, Ky. He sent
whisky from Bowling Green to me at Glasgow by
Adams Express Company. I received it at Adams
Express office in Glasgow. After that I wrote him
to send me my account. He did so, and I mailed
him a money order to Bowling Green, Ky., in pay-
ment."

In the case of James v. Commonwealth, 102 Ky.,
108, 19 Ky. Law Rep., 1045, 42 S. W., 1107, it ap-
peared by the agreed statement of facts that James
was a licensed distiller in Crab Orchard, Lincoln
county, Ky., and as such authorized to sell whisky
by retail in quantities of not less than a quart; that

Doores v. Commonwealth.

prior to the 10th day of January, 1897 (the day on which the illegal sale was charged to have taken place), he had distributed in the county of Rockcastle orders in blank, printed on postal cards which were addressed to himself at Crab Orchard as aforesaid, for spirituous liquors; that on the 11th day of January, 1897, J. J. Cook filled and signed one of these blanks orders, addressed to the defendant at Crab Orchard, for one gallon of whisky; that this order was mailed by Cook to the defendant at Crab Orchard, and there received by him; that the order was filled and the whisky forwarded to Mt. Vernon, in Rockcastle county, by the Adams Express Company, C. O. D., and delivered to the consignee, and the price paid by him to the express company upon receipt of the liquor. The court said: "The sole question involved is whether the sale was made in the county of Rockcastle or in Lincoln county. This precise question was determined in Commonwealth v. Russell (Superior Court, 1889) 11 Ky. Law Rep., 576, and it was held that where whisky ordered by letter was shipped from one county to another by express, C. O. D., the sale took place in the county in which the whisky was delivered to the carrier, and was not a violation of a prohibitory liquor law in force in the county to which it was shipped, citing 2 Kent, 492; Crawford v. Smith, 7 Dana, 60; Sweeney v. Owsley, 14 B. Mon., 413; Duncan v. Lewis, 1 Duv., 184. The same conclusions are reached by the Superior Court in a number of other similar cases. Prof. Benjamin, in his recent 'Principles of Sales' (page 86), states the rule thus: "Where goods are ordered and shipped C. O. D. (collect on delivery), the carrier is said to be the agent of the buyer to receive the goods from the seller, and the agent of the seller to collect the price from the buyer, and

the sale is complete when the goods are delivered
to the carrier—citing Pilgreen v. State, 71 Ala.,
368, and numerous other authorities.  A different
rule prevails in several other States, as well as in
the Federal courts; but the rule laid down by Ben-
jamin is undoubtedly the law in this State, whatever
it may be in some of the other States.  The sale in
this case was therefore in Lincoln, and not in Rock-
castle county.  This case is decided without reference
to the effect of the case of Stamper v. Common-
wealth, 102 Ky., 33, 19 Ky. Law Rep., 1014, 42 S. W.,
915, may have on the special local act involved here.
The judgment is reversed, with directions to dismiss
the prosecution.''

To meet the foregoing principle the Legislature
enacted what is commonly called the ''C. O. D.
Law,'' the pertinent part of which, so far as this
case is concerned, is contained in subsec. 4, sec. 2557b,
Ky. Stats. 1903: ''All the shipments of spirituous,
vinous or malt liquors to be paid for on delivery,
commonly called 'C. O. D. shipments,' into any
county, city, town, district or precinct where said
act [the local option law] is in force, shall be unlaw-
ful and shall be deemed sales of such liquors at the
place where the money is paid or the goods deliv-
ered; the carrier and his agent selling or delivering
such goods shall be liable jointly with the vendor
thereof.''

The principle announced in the case of James v.
Commonwealth stands, except as it may be consid-
ered to have been repealed by this statute.  Clearly
the statute takes from within the principle of the case
only such shipments as are made by express C. O.
D.; otherwise, the principle settled by the opinion re-
mains intact.

The fact that the defendant had, six months or a

year before the sale, said to the witness Williams that if he wanted anything in his line he would be glad to sell it to him, can not be considered nearly so much a contrivance or device to evade the unlawful sale of liquor (within the purview of sec. 2570, Ky. Stats. 1903), as was the act of distributing postal cards addressed by the dealer to himself, for the purpose of having orders mailed to him; and this latter was not considered a trick or device by this court in the case cited. That can not be considered a trick or device which is in itself lawful; and if the sale, as a matter of law, took place in Warren county, where it was lawful for the defendant to make it, that can not be considered a trick or device for evading a statute prevailing in Barren county. The question at last is whether or not the sale was made in the county where the seller was at the time the order was received, or in the county where the witness received the liquor. If the principle announced in James v. Commonwealth prevails, clearly the sale was in Warren county; and this principle must prevail, unless the sale is controlled by the C. O. D. statute, a conclusion we think precluded by the very language of the statute, which is limited in its operation to goods shipped C. O. D.

The case of Doores v. Commonwealth, 76 S. W., 2, 25 Ky. Law Rep., 459, does not control the question under consideration. The facts in that case were not the same as those in the case at bar. In the case cited the defendant made the arrangements for the sale in question, and agreed on the amount to be sold and the price, in the local option district, and afterwards sent it to the buyer by an agreed agent. The court held that this was a sale in the local option county. Nor does the case of Teal v. Commonwealth, 57 S. W., 464, 22 Ky. Law Rep., 350, govern

this case. There the defendant solicited orders in the local option district, and afterwards forwarded them by express (C. O. D.) under an agreement that the money should be paid to the express agent, which was done. The court held that this was a sale in the local option district, and that case is especially differentiated from James v. Commonwealth, in the opinion. Here the order was sent by the witness Williams to the defendant at Bowling Green, either by telephone or by letter. In compliance with this order the whisky was shipped—not C. O. D.—by express to Williams in Glasgow, and the price afterwards sent by money order to the defendant at Bowling Green.

We think the sale was made in Warren county, and therefore the motion for a peremptory instruction should have prevailed.