## City of Louisville v. Board of Education of Louisville.

(Decided May 7, 1929.)

326

ROWAN HARDIN for City of Louisville.

ARTHUR M. RUTLEDGE for Board of Education.

OPINION OF THE COURT BY JUDGE LOGAN—Affirming.

The board of education of the city of Louisville does not have sufficient money in its general fund which it may use for the payment of teachers to enable it to pay the teachers, if the school term is continued for the length of time that has been usual. If the board could be relieved of furnishing equipment for the Western High School for Girls and the Colored Junior High School, it would have enough money to pay the teachers for the usual term. The board has on hand an unexpended balance of proceeds of a $5,000,000 bond issue, the sum of $260,500, and, if it may use a part of this sum to equip these two schoolhouses, the board may retain enough of its general fund to pay the teachers. The question is whether the board must equip these two schoolhouses out of its general fund, or whether it may be allowed to equip them out of the proceeds of the bond issue.

The $5,000,000 school improvement bonds were authorized at an election held in 1925. The proceeds were to be used, so the resolution of the board of education set out when it requested the bond issue, for the purchase of sites, $400,000; for buildings, $4,550,000; for enlargement of school yards, $50,000.

The proceeds of the bond issue were used for the purposes mentioned, except the amount now in the hands of the board unexpended. It is stipulated that heretofore no part of the proceeds of any bond issue has been used for equipping or furnishing buildings erected with the proceeds of any bond issue. The question of whether the proceeds of the bond issue may be used for furnishing and equipping the buildings did not arise until it was discovered that the board was not going to have sufficient

funds to pay its teachers. When this fact was discovered, the board and the city turned their attention towards the matter, and, there being a disagreement as to whether the proceeds of the bond issue might be used to equip and furnish the two buildings mentioned and thereby relieve the general fund of the board from this burden, this suit under the Declaratory Judgment Act (Civil Code of Practice, secs. 639a1-639a12) resulted.

The chancellor adjudged that "funds arising from a sale of the 'School Improvement Bonds' cannot be used by the board of education for furnishing school buildings, nor for equipping them generally, but can be used only for erecting schoolhouses and furnishing to such schoolhouses such equipment as may reasonably be considered to be a part of the school building."

It is conceded by the parties that the authority to use the proceeds of the bonds to furnish and equip the buildings must be found in a legislative enactment, or they cannot be so used. The matter comes down to a construction of the provisions of the Act of March 27, 1924 (section 2978b1, Ky. Stats.), which was an amendment to the Act of March 15, 1912. The language of the act is that, "Whenever the board of education shall deem it necessary for the proper accommodation of the schools of such city to purchase a site or sites or to erect school houses for the high schools or for the other schools, or to purchase land for the enlargement of existing school yards, or for any or all these purposes, . . . ." the board may request the general council to adopt an ordinance submitting to the voters of the city the question of whether bonds shall be issued for such purposes.

The question narrows itself down to whether the language "to erect schoolhouses" should be construed to mean "to erect and furnish schoolhouses." Language must be taken to mean what it is ordinarily understood to mean by the people who generally use the language to express their ideas. If the language "to erect schoolhouses" is not ambiguous and is susceptible of only one construction, the court is not at liberty to add anything to the idea expressed. The word "erect" is well understood by the public generally. It is even a more restricted term than the word "provide" or "build."

It is contended that this court should consider the general policy of the law relating to the same subject.

In acts making effective the same character of legislation relating to different municipalities, the Legislature conferred upon them authority to issue bonds, not only to erect schoolhouses, but to equip them. It is argued that this indicates that it was the intention of the Legislature to allow cities of the first class to issue bonds, not only to erect schoolhouses, but to equip them as well. We do not agree with this argument. Rather the act governing cities of the first class in such matters indicates that the Legislature intentionally omitted the authority to equip schoolhouses with the proceeds of bond issues.

The case of the City of Louisville v. Wehmhoff, 116 Ky. 812, 76 S. W. 876, 79 S. W. 201, 25 Ky. Law Rep. 995, 1924, is relied on as supporting the construction contended for by the city, but we do not think the case is in point. It dealt with questions relating to the extent of the police power of the city of Louisville, and this court held that the language of the statute conferring police power on the city of Louisville should be construed as giving cities of the first class as broad powers as cities of the other classes.

It was said, in the case of Bohannon v. City of Louisville, 193 Ky. 276, 235 S. W. 750, that, in the construction of acts of the General Assembly this rule should prevail: ''The best means, in most instances, to ascertain the intention of the legislature, is to look to the language made use of by it in the statute. Grimes v. Central Life Insurance Co., 172 Ky. 18 (188 S. W. 901), but no intention must be read into it which is not justified by the language used. Western and Southern Life Insurance Company v. Weber (183 Ky. 32, 209 S. W. 716), supra. Words of common use are to be understood in their ordinary significance when applied to the subject matter of legislation.''

The chancellor, in construing the act of 1924 in referring to the words in the above quotaton, ''in their ordinary significance,'' said: ''In this I should understand to be included everything that was incidental to the house, such as fences, walks, blackboards built in the walls, seats in the auditorium, etc. The natural meaning of the words does not seem to me to include the provision of tools for manual training, utensils for home economics, movable tables, chairs, maps, books for the school library nor anything usually understood as furnishings.''

In support of his conclusions, the chancellor cited Chamberlain v. Board of Education, 58 N. J. Law, 347, 33 A. 923, which opinion, in our judgment, fully supports his construction.

The chancellor found that there is nothing in the act which changes or modifies the language which confines the use of the proceeds of a bond issue "to purchase a site or sites or to erect schoolhouses for the high schools or for the other schools, or to purchase land for the enlargement of existing school yards, or for any or all of these purposes, . . ."

We agree with his conclusion on this point, although it is argued that the act shows on its face that the bonds are to be known and designated as "School Improvement Bonds." This designation is not out of harmony with the quoted provision of the act. If the proceeds of the bonds are devoted to the purposes specifically mentioned in the act, undoubtedly they are "school improvement bonds.",

If there should be anything in the contention that the provisions of the act are ambiguous, the chancellor well answered the contention by referring to the familiar rule that, where the meaning of a statute is doubtful, resort may be had to the construction that has been adopted by the executive officers charged with the administration of the law and by the Legislature. The act authorizing cities of the first class to vote school improvement bonds became a law in 1912, and there have been bond issues from time to time in the city of Louisville for school improvements under the provisions of that act, which was amended by the act of 1924. It is clearly made to appear by the record that the proceeds of the bond issues have never been used to furnish and equip schoolhouses. It is also made to appear that the board of education has never construed the act as giving it authority to so use the proceeds of a bond issue. If the provisions of the act are ambiguous, the chancellor was justified in applying the doctrine of contemporaneous construction. National Lead Co. v. U. S., 252 U. S. 140, 40 S. Ct. 237, 64 L. Ed. 496; City of Louisville v. Louisville School Board, 119 Ky. 574, 84 S. W. 729, 27 Ky. Law Rep. 209; Commonwealth v. Gregory, 121 Ky. 256, 89 S. W. 162; Harrison v. Commonwealth, 83 Ky. 162; Fuqua v. Hager, 119 Ky. 407, 84 S. W. 325, 27 Ky. Law Rep. 46; Auditor v. Cain, 61 S. W. 1016, 22 Ky. Law Rep. 1888.

We do not find the provisions of the act ambiguous; its language makes definite and certain the authority which it meant to confer upon cities of the first class in such matters.

It is conceded that money raised by a bond issue can be used for no purpose other than that for which it was raised. The court has not the power to enlarge the purposes of the act. In the case of Montgomery Fiscal Court v. Duff, 227 Ky. 508, 13 S. W. (2d) 515, this court had under consideration a bond issue where the proceeds were to be used "for the purpose of building, constructing and repairing public roads and bridges." It was held in that case by this court that proceeds of bonds voted under the order containing the quoted language could not be used to purchase a right of way for a public road. When voters authorize the issuance of bonds, the authority is limited by the provisons of the ordinance and statute conferring authority for their issuance. The ordinance or act is to be regarded as in the nature of a contract between the municipality on the one side and the voters on the other, and the contract may not be breached by the municipality, or by the department of the municipality having control of the proceeds of the bond issue. Hall v. Montgomery County Fiscal Court, 192 Ky. 716, 234 S. W. 274.

This court has considered the excellent brief filed for the city of Louisville, and the authorities therein cited, but we find nothing which would justify us in disturbing the judgment of the chancellor. He went far enough in liberalizing the provisions of the act.

Judgment affirmed.

Whole court sitting.