

# NUMBER 13-20-00069-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

LEANDRE VONZELL HILL,                                              Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

### On appeal from the 379th District Court
### of Bexar County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Tijerina**
**Memorandum Opinion by Justice Longoria**

Appellant Leandre Vonzell Hill was convicted of murder and sentenced to forty years in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 19.02. In four issues, Hill argues that the trial court erred by: (1) failing to dismiss pursuant to his right to a speedy trial; (2) overruling his *Batson* challenge; and (3–4) admitting objected to evidence. We affirm.

## I. BACKGROUND[1]

On March 24, 2012, Randall Perkins was shot and killed while attending a party at an apartment near the University of Texas at San Antonio. Hill was arrested on April 7, 2012, for the murder of Perkins. The case was pending until March 2014, when the State dismissed the charge against Hill. Subsequently, Hill was re-indicted in December 2017 and arrested in January 2018. Prior to the commencement of trial, Hill filed a motion to set aside the indictment on grounds that his constitutional right to speedy trial was violated.

## A. Speedy Trial

Hill's motion alleged that there was a delay of over seven years, during which time he was arrested and indicted, had the charge dismissed, and re-indicted and arrested on the same charge. After detailing the procedural history of the case, Hill's motion stated:

> Leandre Hill has never waived the right for a speedy trial and has been substantially prejudiced because of the failure of the State to afford a speedy trial, in that he has suffered oppressive pretrial incarceration and substantial anxiety and concern.
>
> Additionally, Leandre Hill has lost contact with essential witnesses to his defense as a direct result of the lapse of time attributable to the STATE'S failure to exercise due diligence in bringing this case to trial.

At the hearing on Hill's motion, he presented testimony from an investigator who stated that he had difficulty locating and communicating with witnesses, specifically indicating that there were approximately thirteen "important" witnesses that he was unable to successfully contact. The investigator explained that some witnesses had moved out

---

[1] This case is before this Court on transfer from the Fourth Court of Appeals in San Antonio pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

of the state or country, and he was unsure if the phone numbers were still current for many of the witnesses. Hill's trial counsel also proffered that there were essential witnesses to the defense who could no longer be located given the period of delay from the date of the incident to the date of the trial.

The State, on cross-examination, elicited testimony that the investigator had been assigned to the case only a year before trial and that there was a possibility that some of the witnesses were available but did not want to talk to him. The State explained that it offered to assist in locating witnesses. Further, the State explained that the dismissal of the first indictment was due to a missing witness. The State also presented information regarding other outstanding charges and convictions leading to incarceration that were pending during the course of the seven-year delay in proceeding with the murder trial.

Hill's motion was denied. Trial commenced in October 2019.

**B.    Trial**

At trial, the State elicited testimony from several people who attended the party where the shooting occurred. The testimony established that there was a large party at a student housing complex on March 23, 2012, that lasted into the early morning hours of March 24, 2012. During the party, an unknown group of males arrived, and shortly thereafter, a fight occurred. Two partygoers were shot, one fatally.

Per the testimony of several witnesses, the shooter was a black male, but the descriptions given to the officers who investigated the shooting were vague. One witness, Brandon Hardy, was able to identify Hill as the shooter from a photo lineup, but at the time of trial, he stated he was not sure of his identification. Tyron Thomas, another

3

eyewitness to the shooting, identified Hill as the shooter. He testified that he saw Hill with the gun, saw the argument between Hill and Perkins, and heard the gunshot. Thomas was also able to identify Hill because of Hill's unique tattoos and provided a drawing of the tattoos.

Hill was convicted and sentenced to forty years' incarceration in the Institutional Division of the Texas Department of Criminal Justice. This appeal followed.

## II.    SPEEDY TRIAL

By his first issue, Hill argues that the trial court erred in denying his motion to set aside the indictment for violation of his Constitutional right to a speedy trial.

## A.    Standard of Review and Applicable Law

We review the legal components of the trial court's denial of Hill's motion de novo and the factual components for an abuse of discretion. *See Cantu v. State*, 253 S.W.3d 273, 282 (Tex. Crim. App. 2008); *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). Because the trial court did not enter findings of fact or conclusions of law, and none were requested, we presume that the trial court resolved any disputed fact issues in the State's favor and we must defer to such presumed findings. *See State v. Munoz*, 991 S.W.2d 818, 821 (Tex. Crim. App. 1999). Our de novo review, however, is governed by a well-established, four-factor balancing test that weighs (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy-trial right, and (4) prejudice suffered by Hill as a result of the delay. *See Barker v. Wingo*, 407 U.S. 514, 529 (1972); *see also Johnson v. State*, 954 S.W.2d 770, 771 (Tex. Crim. App. 1997) ("The balancing test as a whole, however, is a purely legal question . . . reviewed de

4

novo.”). No single factor is determinative of a speedy-trial violation, and both the State's and Hill's conduct must be weighed. *See Barker*, 407 U.S. at 530; *Dragoo v. State*, 96 S.W.3d 308, 313 (Tex. Crim. App. 2003).

The State had the burden to justify the delay; Hill had the burden to prove his assertion of the right and prejudice. *See Barker*, 407 U.S. at 531. Hill's burden varies inversely with the State's degree of culpability for the delay. *See Cantu*, 253 S.W.3d at 280–81.

## B.     Balancing Factors

### 1.     Length of Delay

Although the length-of-delay factor is described as the first of the balancing test, it actually operates as a gatekeeping factor: “Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.” *Barker*, 407 U.S. at 530. In short, to trigger an analysis of the other three factors, we must calculate the period of delay and determine if its length is “presumptively prejudicial.” *Id.*; *see Doggett v. United States*, 505 U.S. 647, 651–52 (1992); *Zamorano*, 84 S.W.3d at 648. Our calculation begins at the time Hill was arrested and ends at the time of trial. *See Zamorano*, 84 S.W.3d at 648–49; *see also State v. Page*, No. 05-18-01391-CR, 2020 WL 1899453, at *4 (Tex. App.—Dallas Apr. 17, 2020, no pet.) (mem. op., not designated for publication). Courts generally deem a delay approaching one year to be unreasonable enough to trigger an analysis of the remaining *Barker* factors. *Balderas v. State*, 517 S.W.3d 756, 768 (Tex. Crim. App. 2016).

5

The State concedes that the length of the delay—over seven years—is sufficient to trigger an analysis of the remaining factors. We agree that this delay goes well beyond the minimum to trigger the remainder of the balancing test, and we conclude that this factor weighs against the State and in favor of finding a speedy-trial violation. *See, e.g.*, *Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *Dragoo*, 96 S.W.3d at 314; *see also Mendez v. State*, 212 S.W.3d 382, 385 (Tex. App.—Austin 2006, pet. ref'd) (substituted op.); *Thames v. State*, No. 02-17-00295-CR, 2019 WL 237556, at *6 (Tex. App.—Fort Worth Jan. 17, 2019, no pet.) (mem. op., not designated for publication)

### 2. State's Justification for the Delay

Our evaluation of the second factor uses a sliding scale by which we assign different weights to different reasons for the delay. *See Barker*, 407 U.S. at 531; *Balderas*, 517 S.W.3d at 768. If the delay resulted from more neutral reasons—negligence or overcrowded courts—this factor will weigh against the State but less heavily. *Barker*, 407 U.S. at 531; *Balderas*, 517 S.W.3d at 768. If the delay resulted from a valid reason, this factor will not weigh against the State. *Munoz*, 991 S.W.2d at 822. Deliberate conduct by the State will, of course, weigh heavily against the State. *See Balderas*, 517 S.W.3d at 768. In the absence of an assigned reason, we may not presume either that the State acted deliberately to prejudice the defense or that there was a valid reason for the delay. *See id.* But we do consider whether the State or Hill was more to blame for the delay. *See id.* Again, the State bears the burden to show that the delay was justified. *See Shaw*, 117 S.W.3d at 889 n.3.

6

Hill was first arrested for the murder in April 2012. Almost two years later, in March 2014, on the morning of trial, the State dismissed the indictment without prejudice. The State's reasoning for the dismissal was a missing witness. The State offers no reason for the delay between the arrest in 2012 and the original trial date in 2014.

Subsequently, over three years later, the State re-indicted Hill on the same charge. The State argues that during the three years, it was continuing to investigate the case, including meeting with additional potential witnesses. The State contends that the complexity of the case, involving "many, many potential witnesses," caused a "longer than usual" investigation before it was able to re-indict Hill. Hill was then re-indicted in 2018 and tried in 2019.

While the State presented some reasoning for part of the delay, the State did not provide a reason for why there was a nearly two-year delay before the dismissal, nor did the State provide much reasoning for the over three-year delay between the dismissal and the re-indictment. The burden of excusing the delay rests with the State, and in light of a silent record or one containing reasons insufficient to excuse the delay, we must presume that no valid reason for the delay existed. *See Turner v. State*, 545 S.W.2d 133, 137–38 (Tex. Crim. App. 1976). The amount of time that passed from the initial arrest and trial was unreasonable. However, no evidence was presented that the delay was intentional or deliberate. This factor weighs against the State, but not heavily. *See Barker*, 407 U.S. at 531 (holding that absent evidence of intent, we will not weigh the factor so heavily as we would were there evidence of intentional conduct on the State's part).

7

### 3. Assertion of Right to Speedy Trial

Under *Barker*, a defendant is responsible for asserting or demanding his right to a speedy trial. *See Barker*, 407 U.S. at 528–29. Although a defendant's failure to assert his speedy trial right does not amount to a waiver of that right, "failure to assert the right . . . make[s] it difficult for a defendant to prove he was denied a speedy trial." *Dragoo*, 96 S.W.3d at 314. This is because a defendant's lack of a timely demand for a speedy trial indicates strongly that he did not really want a speedy trial and that he was not prejudiced by a lack thereof. *See id*. Furthermore, the longer the delay, the more likely it becomes that a defendant would take some action to obtain a speedy trial. *See id*. Thus, inaction weighs more heavily against a violation the longer the delay becomes. *Id*.

Hill contends that he asserted his right to a speedy trial through the filing of a pro se motion to dismiss the indictment in June 2019 "due to unreasonable delay" as well as through his motion to set aside the indictment filed by counsel two days before trial was set to begin. The State responds that when Hill filed his pro se motion, he was represented by counsel and had "no right to hybrid representation," and the trial court was "free to disregard any pro se filed motions." Furthermore, the State argues that Hill never actually requested a speedy trial, but rather only sought a dismissal, which supports the inference that he did not truly wish to have a speedy trial. We agree.

"Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial claim because it shows a desire to have no trial instead of a speedy one." *Cantu*, 253 S.W.3d at 283. "If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure." *Id*. "Repeated requests

8

for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal." *Id*.

Here, Hill sought dismissal of the charge against him, rather than a speedy trial. On the eve of trial, Hill filed a motion to set aside the indictment, again requesting the indictment be set aside with prejudice, rather than requesting a speedy trial. Although it is the State's duty to bring a defendant to trial in a timely manner, it is the defendant's burden to assert the right if violated. *See id*. at 282. And Hill's arguable assertion of the right actually sought dismissal of the indictment, which weakens his speedy-trial claim "because it shows a desire to have no trial instead of a speedy one." *Id*. at 283; *see Balderas*, 517 S.W.3d at 771. This factor weighs against Hill.

### 4. Prejudice to Hill

Prejudice to Hill must be assayed in light of the dangers the speedy-trial right was designed to prevent: (1) oppressive pretrial incarceration, (2) increased anxiety and concern for the accused, and (3) impairment of the accused's defense. *See Dragoo*, 96 S.W.3d at 315 (citing *Barker*, 407 U.S. at 532).

Hill contends that prejudice to his defense may be presumed here based solely on the length of the delay. But this argument conflates the first and fourth *Barker* factors. Presumptive prejudice arises in the context of the first gatekeeper factor and dictates whether the remaining three factors must be considered. *Barker*, 407 U.S. at 530; *see also Fuller v. State*, No. 02-20-00101-CR, 2021 WL 1685956, at *8 (Tex. App.—Fort Worth Apr. 29, 2021, no pet. h.) (mem. op., not designated for publication). If the delay is

9

close to a year or more, prejudice is presumed such that the remaining factors must be considered, including prejudice to the defense. *See Doggett*, 505 U.S. at 652 n.1. Even if presumptive prejudice is found based on the length of the delay, the defendant still must establish prejudice to his defense in the fourth factor. *See id*. ("We note that, as the term is used in this threshold context, 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry."). Here, even though the seven-year delay is presumptively prejudicial, necessitating a review of the remaining *Barker* factors, Hill must show specific prejudice to his defense arising from this presumptively prejudicial delay. *Id*.

Hill argues that even if there is no presumption of prejudice, he established prejudice by stating he suffered anxiety and concern during his pretrial incarceration, and further, he presented testimony that favorable witnesses were unavailable for trial due to the delay. The State responds that Hill was not incarcerated on this charge for the full length of the delay, specifically stating that for nearly three years after the initial dismissal, there were no murder charges pending against Hill arising from this case. The State also argues that Hill had been in and out of legal trouble during the pendency of this matter and had been arrested and incarcerated on unrelated charges. Furthermore, the State contends that Hill did not present any "game-changer" testimony that the alleged missing witnesses would have provided, nor did Hill present any testimony of his alleged anxiety.

Limiting the impairment of a defense is the most serious interest protected by the right to a speedy trial. *Barker*, 407 U.S. at 531. If witnesses become unavailable during a

delay or are unable to recall events, prejudice is obvious. *Id*. at 532. At the hearing on his motion, Hill claimed that there were witnesses who were now unavailable, either due to the witness leaving the jurisdiction or residing in places unknown, and whose testimony "would be necessary for a proper and fair trial." These witnesses included several attendees of the party where the shooting occurred, some who may have seen the shooting and others who may have had information related to a potential different suspect.

"[C]onsideration of prejudice is not limited to the specifically demonstrable, and . . . affirmative proof of particularized prejudice is not essential to every speedy-trial claim." *Doggett*, 505 U.S. at 655. Hill had the burden, however, to make a prima facie showing of prejudice. *Dokter v. State*, 281 S.W.3d 152, 159 (Tex. App.—Texarkana 2009, no pet.). A defendant must offer more than mere speculation of faded memories to show prejudice. *State v. Munoz*, 991 S.W.2d 818, 829 (Tex. Crim. App. 1999). Here, Hill presented testimony from an investigator that he was unable to locate several witnesses and Hill's counsel proffered that these witnesses had information, "much of which [would be] exculpatory for Mr. Hill," but did not assert where this information came from.[2] "In assessing the evidence at a speedy-trial hearing, the trial judge may completely disregard a witness's testimony . . . , even if that testimony is uncontroverted." *Cantu*, 253 S.W.3d at 282. Giving deference to the trial court's factual findings, we conclude that impairment to the defense, the most important consideration under this factor, was not shown. *Barker*, 407 U.S. at 532.

---

[2] Hill's counsel offered limited potential testimony for the unavailable witnesses from the "prosecution guide."

Though "actual prejudice" need not be proven, a defendant has a burden to show some prejudice due to the delay of his or her trial. *Harris v. State*, 489 S.W.2d 303, 308 (Tex. Crim. App. 1973); *Courtney v. State*, 472 S.W.2d 151, 154 (Tex. Crim. App. 1971); *Marquez v. State*, 165 S.W.3d 741, 749 (Tex. App.—San Antonio 2005, pet. ref'd). Where a defendant claims that witnesses became unavailable because of the delay, he must make a showing that "the witnesses are unavailable, that their testimony might be material and relevant to his case, and that he has exercised due diligence in his attempt to find them and produce them for trial." *Harris*, 489 S.W.2d at 308; *see Phipps v. State*, 630 S.W.2d 942, 947 (Tex. Crim. App. 1982) ("Even if it be conceded that the testimony of the missing witnesses was material to the instant case, the appellant has not shown diligence in procuring the witnesses as the record fails to indicate that the witnesses were subpoenaed."); *Marquez*, 165 S.W.3d at 750.

Here, Hill claims that witnesses are unavailable. Hill presented an investigator who stated that he attempted to contact the witnesses but was largely unsuccessful. The investigator also determined that several witnesses had relocated. The investigator, however, also testified that he had only just began looking for the witnesses within the year prior to trial and that he forgot to bring his notes to the hearing, so he could not provide any detail of his attempts to contact the witnesses. And, while Hill speculates about what those witnesses might have testified to, that is just speculation in this record, which fails to demonstrate that Hill's ability to defend himself was prejudiced by the delay. *See Phipps*, 630 S.W.2d at 947; *Harris*, 489 S.W.2d at 309.

As to the "oppressive pretrial incarceration" subfactor, the "dispositive

12

consideration" is the impairment of a defendant's liberty with its effects upon the defendant. *See Barker*, 407 U.S. at 532–33; *see also United States v. Loud Hawk*, 474 U.S. 302 (1986) (speedy trial guarantee designed to minimize possibility of lengthy incarceration before trial, to reduce the lesser impairment of liberty imposed on accused while released on bail and to shorten disruption of life caused by arrest and presence of unresolved criminal charges); *Doggett*, 505 U.S. at 661 (core concern of Speedy Trial Clause is impairment of liberty and "delay-related prejudice to a defendant's liberty"); *Munoz*, 991 S.W.2d at 828 (concluding defendant's seventeen month incarceration implied finding that he was scared and anxious beyond what would be expected from ordinary and inevitable pretrial incarceration). Hill's nearly four year pre-trial incarceration period was not minimal, and likely created substantial anxiety and stress. *See Munoz*, 991 S.W.2d at 828.

We accordingly conclude that this fourth factor weighs slightly in favor of dismissal.

### 5. Balancing Conclusion

A balancing of the *Barker* factors demonstrates that the trial court did not err in denying Hill's motion to set aside the indictment. We balance the *Barker* factors with "common sense and sensitivity to ensure that charges are dismissed only when the evidence shows that a defendant's actual and asserted interest in a speedy trial has been infringed." *Cantu*, 253 S.W.3d at 281. Comparing the facts of this case to *Barker's* facts, we conclude the State did not violate appellee's right to a speedy trial. *See Barker*, 407 U.S. at 533–37 (no speedy trial violation where delay exceeded five years with more than four years of the delay unexcused, defendant did not assert right to speedy trial, and

13

prejudice was "minimal"). Because the trial court did not err in denying Hill's motion to set aside the indictment, we overrule his first issue.

### III. *BATSON* CHALLENGE

By his second issue, Hill argues it was error for the trial court to overrule his *Batson* challenge, specifically contending that the State "struck every black juror on the panel and then failed to provide an adequate race-neutral justification for striking them." *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986).

Using a peremptory challenge to strike a potential juror because of race violates the equal protection guarantee of the United States Constitution as well as article 35.261 of the Texas Code of Criminal Procedure. *See id*.; TEX. CODE CRIM. PROC. ANN. art. 35.261. In the face of perceived purposeful discrimination, the defendant may request a *Batson* hearing. *See* TEX. CODE CRIM. PROC. ANN. art. 35.261(a). A defendant's *Batson* challenge to a peremptory strike is a three-step process. *Purkett v. Elem*, 514 U.S. 765, 767–68 (1995); *Simpson v. State*, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003). The defendant must first make a prima facie case of racial discrimination, based on the totality of relevant facts about the prosecutor's conduct during the trial. *Miller–El v. Dretke*, 545 U.S. 231, 239 (2005); *Purkett*, 514 U.S. at 767; *Simpson*, 119 S.W.3d at 268; *see* TEX. CODE CRIM. PROC. ANN. art. 35.261. If the defendant makes a prima facie case, the burden of production shifts to the State to present a race-neutral reason for its challenged strike— i.e., "a clear and reasonably specific explanation of [the] legitimate reasons" for exercising its strike. *Miller–El*, 545 U.S. at 239; *see* TEX. CODE CRIM. PROC. ANN. art. 35.261(a) ("If the defendant establishes a prima facie case, the burden then shifts to the attorney

14

representing the State to give a racially neutral explanation for the challenges."). A reason is deemed race neutral if no discriminatory intent is inherent in the prosecutor's explanation. *Purkett*, 514 U.S. at 768; *Thomas v. State*, 209 S.W.3d 268, 270 (Tex. App.—Houston [1st Dist.] 2006, no pet.). When the prosecutor responds by offering a race-neutral explanation, the inquiry whether the defendant has made a prima facie case becomes moot, and the defendant may rebut the State's explanation. *Simpson*, 119 S.W.3d at 268; *Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001). In the third and final step, the trial court must decide whether the defendant carried the burden to establish purposeful discrimination. *Miller–El*, 545 U.S. at 239; *Purkett*, 514 U.S. at 768; *Simpson*, 119 S.W.3d at 268. The trial court's inquiry addresses whether the neutral reasons provided by the prosecutor for the peremptory challenge were contrived in order to conceal racially discriminatory intent. *Jasper*, 61 S.W.3d at 421.

Throughout the challenge, the burden of persuasion remains with the defendant, who may continue to rebut the prosecutor's explanations before the trial court decides the *Batson* challenge. TEX. CODE CRIM. PROC. ANN. art. 35.261(a); *Purkett*, 514 U.S. at 768; *Simpson*, 119 S.W.3d at 268; *see Thomas*, 209 S.W.3d at 270.

A. **Standard of Review and Applicable Law**

A reviewing court examines jury selection from a cold record. *Satterwhite v. State*, 858 S.W.2d 412, 415 (Tex. Crim. App. 1993). In other words, it is the trial court who has the opportunity to view each venireperson's demeanor and to evaluate his or her credibility and, ultimately, is in the better position to pass on the challenges for cause presented. *Id*. at 415 (citing *Smith v. State*, 676 S.W.2d 379, 387 (Tex. Crim. App. 1984)).

Consequently, we cannot reverse a trial court's ruling on a *Batson* challenge unless it is clearly erroneous. *See Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). To hold that a trial court clearly erred, we must have a "definite and firm conviction that a mistake has been committed." *Goldberg v. State*, 95 S.W.3d 345, 385 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). We may not substitute our opinion for the trial court's factual assessment of the neutrality of the prosecutor's explanation for exercising strikes, and we focus on the genuineness, rather than the reasonableness, of the prosecutor's asserted nonracial motive. *Gibson*, 144 S.W.3d at 534 n. 5 (citing *Purkett*, 514 U.S. at 765). We give great deference to the trial court's determination, and we view the evidence in the light most favorable to the trial court's ruling. *Id*. at 534 n. 6 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)); *Jasper*, 61 S.W.3d at 422.

## B.    Analysis

In response to the State's exercise of its strikes, Hill's trial counsel asserted a *Batson* challenge, contending that the State had struck two venire members based solely on their race—the only two venire members who were African-American. The State offered race-neutral reasons for striking each venire member. We review each peremptory strike and the explanation offered by the State for each. *See Harper v. State*, 930 S.W.2d 625, 634 (Tex. App.—Houston [1st Dist.] 1996, no pet.).

Venire member number 20 indicated that she was a "1" when asked her personal opinion of law enforcement. A "1" meant "I don't trust them. I don't think they're doing a good job." The State argues that venire member number 20, the only juror to respond as a "1," was struck based on her explicit distrust of law enforcement. Hill argues that distrust

16

of law enforcement is not a viable reason to strike a juror in this case because the case was based on eyewitness testimony, not on law enforcement. However, the State responds that the charge and arrest of Hill only came after significant police investigation and interviews. The State's case, therefore, involved police interaction and a distrust of police could impact the State's ability to present its case.

Venire member number 36 indicated that she was an "R-2" in response to the State's question regarding whether there should be punishment or rehabilitation for the offense of murder. An "R-2" indicates that venire member number 36 believed rehabilitation was the appropriate course of action and that the defendant's criminal history was most important in determining punishment. Additionally, venire member number 36 answered in the affirmative when asked if she ever "had a really bad experience with a police officer that would be in [her] mind if [she] saw a police officer." Venire member number 36 also indicated she was a "2" on the same question as venire member number 20, indicating a level of distrust of police. The State argues that venire member number 36's belief that a convicted murderer should be rehabilitated instead of punished was the reason for striking her. The only other juror to respond as an "R-2" was venire member number 50, and venire member number 50 was outside of the strike zone.

Hill argues "[p]ersonal preference of rehabilitation over punishment has nothing to do with electing to convict the accused and a view that the purpose of the criminal justice system is to rehabilitate does not speak to whether someone would not choose to send someone to prison." However, a venire member's preference for rehabilitation has been held to be a race-neutral reason for a peremptory strike. *See Adanandus v. State*, 866

17

S.W.2d 210, 224–25 (Tex. Crim. App. 1993).

The race-neutral explanation does not have to be "persuasive, or even plausible." *Purkett*, 514 U.S. at 768. Rather, "the issue is the facial validity of the [State]'s explanation. Unless a discriminatory intent is inherent in the [State]'s explanation, the reason offered will be deemed race neutral." *Id*. Here, there is sufficient evidence to support the trial court's finding of no purposeful discrimination. Having viewed the record in the light most favorable to the trial court's ruling, we conclude that the denial of the *Batson* challenge was not clearly erroneous as to either of the peremptory strikes. Hill's second issue is overruled.

## IV. ADMISSION OF EVIDENCE

In his third and fourth issues, Hill argues that the trial court erred in admitting certain evidence, namely a photo of Hill "without a shirt on but in a white prison uniform" (issue three) and a drawing of Hill's tattoos done by Thomas (issue four).

## A. Standard of Review

The standard of review for the admissibility of evidence is an abuse-of-discretion standard. *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). In determining whether the trial court abused its discretion, we consider whether the court acted without reference to guiding rules or principles; that is, whether the court acted arbitrarily or unreasonably. *Id* at 380.

## B.     Photograph of Hill

In his third issue, Hill contends that the admission of a photograph of him pictured "without a shirt, standing in front of a white wall, wearing white pants, and his arms are slightly elevated to his sides" was error as the photograph was unfairly prejudicial. Hill argues that it was "apparent that the photograph depicts [him] while he was an inmate . . ., thus infringing on his fundamental right to the presumption of innocence."

Relying in part on this Court's analysis in *Alexander v. State*, 88 S.W.3d 772 (Tex. App.—Corpus Christi–Edinburg 2002, pet. ref'd), Hill contends that the admission of the photograph was reversible error. In *Alexander*, we found that the use of a mug shot for the sole purpose of showing that appellant owned a black leather jacket was reversible error. *Id*. at 780. "The mug shot photograph had nothing to do with any fact of consequence, merely showing that nearly two years before the commission of the murder that [appellant] had a black leather jacket, without any showing that it was the same leather jacket left by the assailant in this case." *Id*. We further held that it was clear that the photograph was indeed a mug shot. *Id*. at 782. The State responds that the photograph in this case was used to show the jury Hill's tattoos, which were heavily discussed in trial testimony. Furthermore, the State argues that it is not apparent that Hill is in prison in the photograph.

The trial court conducted a Rule 403 balancing test to determine the admissibility of the exhibit. *See* TEX. R. EVID. 403 (stating that the court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice"). When a trial court balances the probative value of the evidence against its danger of unfair

19

prejudice, a presumption exists that the evidence will be more probative than prejudicial.

*Montgomery*, 810 S.W.2d at 389.

> [A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice.

*Newton v. State*, 301 S.W.3d 315, 319 (Tex. App.—Waco 2009, pet. ref'd) (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (footnote omitted)).

In balancing the factors as enumerated in *Gigliobianco*, it is clear that the photograph clearly depicts Hill's tattoos, a topic that was repeatedly discussed in trial testimony. Hill argues that there was another photograph admitted that depicted his tattoos as they were on the night of the murder, and the prison photograph was unnecessary. However, in the photograph on the night of the murder, Hill is wearing a backpack which covers some of his tattoos and does not fully depict his chest, as the State intended to do through use of the complained-of photograph. There was a probative value to the admitted photograph, and the State, therefore, had a need for the photograph to accurately depict Hill's tattoos. *See Gigliobianco*, 210 S.W.3d at 641–42.

While Hill contends that this case is similar to *Alexander*, we disagree. The photograph at issue here does not clearly indicate that Hill was incarcerated. There are no handcuffs or prison identification markers present in the photo. A plain white

20

background and the top of a pair of white pants is not enough to determine that this photo must have been taken in a prison. *See Huerta v. State*, 390 S.W.2d 770, 772 (Tex. Crim. App. 1965). The trial court did not abuse its discretion in admitting the photograph because the danger of unfair prejudice did not substantially outweigh the probative value of the photograph. *See* TEX. R. EVID. 403; *Montgomery*, 810 S.W.2d at 391. We overrule Hill's third issue.

### C. Tattoo Drawing

In his fourth issue, Hill argues that the trial court erred in admitting a drawing done by Thomas of Hill's tattoos. Hill objected to the admission of the drawing as irrelevant and prejudicial. *See* TEX. R. EVID. 401, 403. He argues that the State used the drawing "for the proposition that [Thomas] was able to draw, in detail and allegedly from memory, the shooter's tattoos to identify [Hill] as the shooter." He further contends that the drawing, which was done three years after the shooting, was not based on Thomas's memory from the evening of the shooting, but rather was created after Thomas had seen photographs of Hill which depicted his tattoos. Because Thomas "had already identified [Hill] as the shooter," Hill argues that the State had no need for the drawing to be admitted as evidence to prove identity. Lastly, Hill contends that the drawing impermissibly bolstered Thomas's credibility.

The State argues that Hill's contentions regarding when the picture was drawn go to the weight the jury should give the evidence, not to its admissibility. The State sought to admit the drawing for the purpose of proving identity, as Thomas identified Hill as the shooter in part because of Hill's tattoos. Under a Rule 403 analysis, the drawing had

21

relevance and probative value as it depicted Thomas's memory of the tattoos of the shooter where identity was the main issue at trial. The fact that Thomas had already identified Hill as the shooter does not decrease the probative value of the drawing. Thomas testified that his drawing was based on his memory from the night of the shooting, as opposed to the photos he had seen. Hill was able to cross-examine Thomas and to put forth his argument that Thomas's drawing was based on his viewing of photos rather than his memory of the shooter.

A photograph is generally admissible if verbal testimony about the matters depicted in the photograph is also admissible. *Paredes v. State*, 129 S.W.3d 530, 539 (Tex. Crim. App. 2004). The trial court did not abuse its discretion in admitting the drawing because it was relevant and the danger of unfair prejudice did not substantially outweigh its probative value. *See* TEX. R. EVID. 401, 403; *Montgomery*, 810 S.W.2d at 391. Hill's fourth issue is overruled.

## V.   CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
17th day of June, 2021.